LEO R. COHN AND MAYME K. COHN, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 84869.    Filed June 22, 1962.

*John L. Carey, Esq.*, for the petitioners.
*Don S. Harnack, Esq.*, and *Helen A. Viney, Esq.*, for the respondent.

FAX, *Judge:* The Commissioner determined deficiencies in the petitioners' income taxes, as follows:

| Year | Amount |
| --- | --- |
| 1953 | $849.54 |
| 1954 | 1,314.28 |
| 1955 | 983.57 |

The issues for decision are as follows:

(1) Whether the petitioners are entitled to deduct as a medical expense the cost of transportation to Florida in each of the taxable years.

(2) Whether the petitioners are entitled to deduct as a medical expense the amount paid for hotel accommodations in Florida in each of the taxable years.

(3) Whether the petitioners are entitled to deduct as a medical expense in 1953 and 1954 the amount of an additional charge made by restaurants for preparing salt-free food.

(4) Whether the petitioners are entitled to deduct as a medical expense in 1953 and 1954 the taxi fares to restaurants which would prepare salt-free meals.

(5) Whether the petitioners are entitled to deduct as a medical expense in 1954 the cost of transportation to Denver, Colorado, and the cost of hotel accommodations there.

(6) Whether substantiation of the payments claimed by the petitioners as medical expenses during the taxable years is properly in issue.

(7) Whether the petitioners are entitled to depreciation on certain real property in each of the taxable years.

#### FINDINGS OF FACT.

A few of the facts are stipulated and are found as stipulated.

The petitioners are husband and wife and reside in South Bend, Indiana. They filed their joint Federal income tax returns for the years in issue with the district director of internal revenue at Indianapolis, Indiana.

In 1953 Leo was over 72 years of age. He was not well. His primary ailment was high blood pressure, associated with heart failure, a stroke, an old prostatic infection, an old chronic bronchitis that had been related to an old tuberculosis and atypical pneumonia, and the residual effects of these diseases. In March 1950 he had suffered a stroke which resulted in partial paralysis. Because of this paralysis he was not able to care for himself. He could not dress himself nor could he cut up his food. Although he recovered from this paralysis he remained weak and continued to need a great deal of assistance.

As a result of his old tuberculosis and bronchiectasis, Leo was prone to develop lung infections if he remained at his home in South Bend during the winter months. On two occasions he did remain in South Bend into the month of November and in both instances he developed atypical pneumonia. His doctor therefore prescribed a warmer climate for him for the winter months.

Leo had gone to Florida on some occasions prior to the years in issue. His first trip to Florida was made in 1931 and was made for reasons of health. His wife did not accompany him to Florida prior to the time he had his stroke; thereafter she did go with him. She did not, however, go to Florida with him because she wanted to, but only because he needed someone to take care of him. If she had not accompanied him it would have been necessary for him to employ a nurse to take care of him.

The petitioners did not wish to leave South Bend in the winter months largely because their children lived there. Therefore, they delayed their departure for Florida until the last possible moment in order to remain in South Bend as long as possible.

While the petitioners were in Florida they did not engage in any of the activities which vacationers ordinarily engage in. Leo's health was such that he could not have engaged in these activities had he wanted to do so.

Because Leo suffered from recurrent heart failure, his doctor prescribed a salt-free diet for him. In order to conform to this diet, Leo could not add salt to his food and could eat only food that was processed and prepared without salt. An exception was made in the case of bread and butter to satisfy his minimum need for salt.

During the winter months of 1953 the petitioners went to Florida because of the recommendation of Leo's doctor. Petitioners stayed at several different hotels. None of the hotel rooms which they occupied during 1953 contained cooking facilities. All these hotels served meals but none of them were willing to prepare salt-free food as required by Leo's diet. As a result he was required to take a taxi to restaurants that would prepare salt-free meals for him. If it had not been necessary to his health that he have salt-free food, he would have taken his meals in the dining facilities of the hotel at which he was staying. An additional charge was made by the restaurants for preparing his meals without salt.

On their income tax return for 1953 the petitioners deducted $300 for their transportation to Florida, $2,073.51 for hotel accommodations in Florida, $480 for taxi fares to restaurants which would prepare salt-free meals, and $840 for additional charges imposed to prepare salt-free meals.

In 1954 also the petitioners spent the winter months in Florida. During a part of that time they occupied a hotel room which contained cooking facilities. While they occupied that room, Leo's wife prepared salt-free meals for him in their hotel room. However, during the portion of their stay when they had hotel accommodations without cooking facilities, it was again necessary for Leo to take a taxi to restaurants which would prepare salt-free meals and to pay the additional charge for this service.

On their income tax return for 1954 the petitioners deducted $641.43 for their transportation to Florida, $2,128.43 for hotel accommodations, $204 for taxi fares to restaurants which would prepare salt-free meals, and $800 for additional charges imposed to prepare salt-free meals.

In 1955 the petitioners again went to Florida during the winter months. They had hotel accommodations with cooking facilities during all of their stay that year. Therefore, Leo's wife prepared all of his meals for him.

On their income tax return for 1955 the petitioners deducted $408.84 for their transportation to Florida and $2,420.25 for hotel accommodations.

In 1954 the petitioners went to Denver, Colorado. This trip was taken partly because of Leo's health and partly because he had some business to transact in Denver with respect to real property which he owned there. The petitioners on their 1954 income tax return deducted $138.36 for railroad fare to Denver and $18.15 for hotel accommodations.

All the claimed medical deductions previously discussed were disallowed by the respondent. The petitioners claimed certain other medical expenses as deductions during each of the taxable years in issue, which deductions were allowed by the respondent.

In each of the taxable years the petitioners claimed deductions for depreciation on certain real property described as 1119 S. Michigan and 1139 S. Michigan, South Bend, Indiana. At the end of 1911 Leo held a 40-percent interest in the 1119 S. Michigan property. In 1914 he acquired a 25-percent interest in the 1139 S. Michigan property. Beginning in 1941, through various transactions, Leo acquired additional interests in these properties. The petitioners claimed depreciation with respect to the interests acquired beginning in 1941. On their income tax returns for 1953, 1954, and 1955 the petitioners took depreciation deductions in the respective amounts of $600, $600, and $445. These deductions were disallowed by the respondent.

The primary purpose of the petitioners' trips to Florida was the prevention of respiratory ailments to which Leo was susceptible. The trips would not have been taken had he not been advised by a doctor to take them. They were reasonably designed to effect the prevention of the respiratory diseases to which Leo was especially subject. They were in no sense vacation trips, even in part. Leo's condition was such that he could not have made these trips alone, and, therefore, his wife's presence and assistance were essential.

## OPINION.

The respondent contends that the petitioners' trips to Florida were vacation trips and that they would have been made even if Leo had not been advised to take them. After considering all the evidence we have found that these trips were not vacation trips and would not have been taken in the absence of a doctor's advice to take them. Therefore, the cost of Leo's transportation to Florida is deductible as a medical expense. *Robert M. Bilder*, 33 T.C. 155 (1959), reversed on another issue 289 F. 2d 291 (C.A. 3, 1961), and *Max Carasso*, 34 T.C. 1139 (1960), affd. 292 F. 2d 367 (C.A. 2, 1961). We have further found that the presence of his wife during these trips was indispensable. Therefore, the cost of her transportation to Florida is also deductible as a medical expense. *Max Carasso, supra.*

Since we have found that the petitioners' trips to Florida were made solely for medical reasons, they are entitled to deduct the cost of

hotel accommodations during 1953. That year is governed by the Internal Revenue Code of 1939. The cost of lodging incident to trips undertaken as medical care is deductible under section 23(x) of the Internal Revenue Code of 1939. *L. Keever Stringham*, 12 T.C. 580 (1949), affirmed per curiam 183 F. 2d 579 (C.A. 6, 1950), and *Commissioner* v. *Bilder*, 369 U.S. 499 (1962). However, the petitioners' hotel expenses for 1954 and 1955, years governed by the Internal Revenue Code of 1954, are not deductible. The Supreme Court has recently held that Congress in enacting section 213(e)(1)(B) of the Internal Revenue Code of 1954 intended to preclude the deductibility of such expenses. *Commissioner* v. *Bilder, supra.*

The petitioners contend that they are entitled to deduct as a medical expense the additional charge made by restaurants for preparing Leo's meals specially without salt. The respondent argues that these charges are not deductible under the rule stated in Rev. Rul. 55–261, 1955–1 C.B. 307, and *Doris V. Clark*, 29 T.C. 196 (1957), which followed that ruling. However, upon analysis, that ruling and case do not support the respondent's position. Briefly, they interpret the law to allow a medical expense deduction for food and beverage prescribed for the alleviation or treatment of an illness if the prescribed food or beverage is not a substitute for food and beverage ordinarily consumed, but to deny a deduction if the food or beverage is such a substitute. Here the item sought to be deducted is not the cost of the food which was taken to satisfy Leo's ordinary nutritional needs but rather the additional charge for special preparation of salt-free food. This charge is in no sense a personal living or family expense—it is a sum paid for the mitigation, cure, or prevention of a disease. Therefore, the petitioners are entitled to deduct as a medical expense in 1953 and 1954 the additional charges made by restaurants to prepare salt-free meals for Leo.

The petitioners also are entitled to deduct as a medical expense Leo's taxi fares to restaurants which would serve him salt-free food. Transportation to restaurants where he could eat and observe his diet is transportation primarily for medical purposes. The cost of such transportation during 1953 and 1954 is deductible as a medical expense. *Stanley D. Winderman*, 32 T.C. 1197 (1959).

The petitioners seek a deduction as a medical expense for the cost of transportation to Denver in 1954 and for their lodging expenses there. However, they testified that one of the reasons for making this trip was to look after some property which Leo owned in Denver. For this reason we are unable to find that this trip was undertaken primarily for medical reasons. Therefore, the petitioners have not shown that they are entitled to deductions for the expenses related to this trip.

The respondent in his brief indicates he does not believe that the total amount of taxi fares to restaurants which would prepare salt-free meals and the total amount of the additional charges for those meals have been substantiated. Substantiation was not mentioned by the respondent in the notice of deficiency, his answer, or on opening statement. The only reference to substantiation is in a brief comment in the argument portion of the respondent's brief. We must agree with the petitioners that the question of substantiation is not in issue. In reaching this conclusion it is not necessary to decide whether the language of the deficiency notice and answer is sufficient to require the petitioners to prove that they actually spent the sums claimed as deductions. The petitioners' counsel in his opening statement stated that no issue of substantiation had been raised. Respondent's counsel did nothing, affirmatively or negatively, to indicate that substantiation was in question. This we think is sufficient to relieve the petitioners of the burden of presenting evidence to substantiate these amounts.

Finally, the petitioners urge that they are entitled to deductions for depreciation on two pieces of improved real property. They claim deductions only with respect to certain interests in the properties acquired by Leo after 1940. The evidence in regard to these acquisitions is not entirely clear. In particular, Leo's basis in these interests is not clearly shown in the record. However, findings are not required with respect to these items because we could not find the petitioners entitled to the claimed depreciation in any event. Although there is some evidence regarding the cost to Leo of these interests, there is nothing in the record on which we could base an allocation of cost between the land and the improvements. Furthermore, there is no evidence of the remaining useful lives of the improvements at the time Leo acquired the interests in question. Therefore, the petitioners have not shown that they are entitled to the claimed depreciation in the years 1953, 1954, and 1955.

*Decision will be entered under Rule 50.*