ALFRED W. FORD and EMILIE FORD, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Ford v. Commissioner
Docket No. 12514-77.
United States Tax Court
T.C. Memo 1979-109; 1979 Tax Ct. Memo LEXIS 420; 38 T.C.M. (CCH) 507; T.C.M. (RIA) 79109; March 26, 1979, Filed Emilie Ford, pro se. Joseph F. Maselli, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: This case was assigned to and heard by Special Trial Judge Charles R. Johnston, pursuant to the provisions of section 7456(c) of the Internal Revenue Code of 1954, as amended, and General Order No. 6 of this Court, 69 T.C. XV. [1] The Court agrees with and adopts the Special Trial Judge's opinion which is set forth *421 below. OPINION OF SPECIAL TRIAL JUDGE JOHNSTON, Special Trial Judge: Respondent determined a deficiency in petitioners' Federal income tax for 1975 in the amount of $2,041.50 and an addition to tax under section 6651(a) [2] in the amount of $102.07. Concessions having been made the issues remaining for decision are: (1) whether petitioners are entitled to deduct medical expenses under section 213 in excess of the amount allowed by respondent; and (2) whether petitioners are subject to an addition to tax pursuant to section 6651(a) for failure to file their return within the time prescribed by the statute. FINDINGS OF FACT Certain of the facts have been stipulated and are found accordingly. Petitioners, Alfred W. Ford and Emilie Ford, had their legal residence on February 21, 1978, the date of filing of the amended petition herein, at Cinnaminson, New Jersey. During the *422 year 1975 Emilie Ford and her son lived together in New Jersey. Alfred Ford spent most of his time in North Carolina. The Fords purchased a substantial amount of vegetables [3] each week which were reduced to liquid form by a process described as trituration. The machines which produce these liquids are described as a triturator, a juicer, a seed grinder and a salad master. Petitioners possessed two triturators in 1975, acquired on January 2, 1975, and one each of the other machines. The triturators cost $237 each plus shipping costs of $12 - $15. Repairs on these machines amounted to $42 in 1975. The seed grinder cost $12 - $13 and the salad master cost $39 - $49. *423 It takes about 9 hours to process the vegetables in the machines and Emilie hires people to do it once a week on Saturdays. The processing produces about 14 quarts of liquid. The processors are paid $2 an hour for their labor and Emilie spent a total of $617 for that purpose in 1975. Emilie claims that she and her family suffer or suffered from a variety of ailments for which treatments were given by a variety of doctors over unspecified periods of time. Two of these were medical doctors; one an osteopath; two chiropractors; two dentists; one physical therapist; and, two whose specialty or training does not appear in this record. Petitioner relies principally on Dr. Luelle Hamilton, a doctor of osteopathy, as the medical adviser for her and her family. Unfortunately, Doctor Hamilton did not appear as a witness. Petitioner introduced a letter from Doctor Hamilton, the contents of which were hearsay and objected to by respondent. Although the letter was admitted for the limited purpose of showing its receipt by Emilie, it was made clear to her that the contents were not proved. On their Federal income tax return for 1975, petitioners claimed a medical expense deduction *424 of $2,980.59. Respondent disallowed $2,79.03 of this deduction after statutory reductions due to adjustments in adjusted gross income. The disallowed portions of the claimed medical expenses consist of $1,469.86 for medicines and drugs; $1,190.00 for special equipment and preparations; and $353.55 for doctors, dentists and nurses expenses. The entire medicine and drugs deduction of $1,469.86 represented the purchase of foods (mostly vegetables) by petitioners for their personal consumption. The $1,190.00 special equipment and preparation represented the cost of special machines used by petitioners to prepare their food for consumption and the labor needed to prepare the food. Petitioners claim that special vegetables and fruit preparations are necessary for control of mucolysis, hypertension, sluggish bowel, sinus congestion, allergies, post-nasal drip and capillary fragility. Emilie also claimed to have received manipulative treatment by an osteopathic physician and chiropractor or pressure masseur, three to six times a month for correction of spinal or skeletal abnormalities and pain, as needed. Colonic irrigations have been prescribed four times a month as were re-examination *425 of spinal and skeletal deviations four times a year. This confused record indicates that these ailments were attributed to the Ford family, of which there are four members. There is no indication whether they all were similarly afflicted or whether some of the ailments were peculiar to individual members. Petitioners claimed deductions for amounts paid by check to the following: Rising Sun Christianity
$64.75
Rising Sun Christianity
32.25
Mohonk Mountain House
63.70
May Post
5.00
Mrs. James A. Madison
16.50
Frank LaVey
10.00
Maryanne Toscano
10.50
Rising Sun Christianity is an organization or entity which maintains a building, a converted mansion in Boston, as a rest home or establishment. Patrons are free to do as they please. Meals are provided of specially prepared food, raw fruit or juices. Patrons may exercise or meditate or receive physical therapy. There were at least two lectures a day on subjects that do not appear of record. The amount paid Mohonk Mountain Home represented attendance at a convention near Poughkeepsie, New York. Emilie stated that she purchased aloe vera, a medicinal derivative from a plant which is a member of the *426 lily family, from Mrs. Madison. The payments to LaVey and Toscano were for massages for Emilie. OPINION Respondent, in determining the deficiency herein, allowed deductions for amounts paid to the physicians for which the petitioners had checks. He wisely did not allow amounts paid to a certain chiropractor using "a voluntary system. Payment is made into a box, * * * if the payment is made by check, she has a record of payment. If she paid caash (sic), we do not have a record of the amount." At the trial respondent conceded that petitioner had the following additional medical expenses to the amount allowed in the notice of deficiency: Dr. Patterson
$100.00
Dr. Wells
79.00
Of the amounts paid to Rising Sun Christianity, Mohonk Mountain House, Post, Madison, LaVey and Toscano, only the amounts paid to Madison, LaVey and Toscano can be considered in the nature of medical expenses and then, on this record, only barely so. Accordingly, we find that petitioners are allowed an additional medical expense of $37.00. Petitioner relies upon Randolph v. Commissioner,67 T.C. 481 (1976) and Cohn v. Commissioner,38 T.C. 387 (1962). *427 Respondent contends that the facts in this case are clearly distinguishable from Randolph and Cohn. In Randolph there was extensive medical testimony and in Cohn the medical condition was not questioned. Here we have only the self-serving testimony of Emilie as evidence of the medical condition or conditions the special preparation was supposed to alleviate. So far as it can be discerned on this record the food consumed by petitioners was of the type that normally is consumed but the method of preparation differed and we have no medical evidence before us that the method cured, mitigated, treated or prevented any disease or affected any structure or function of the body. Furthermore, even if the specially prepared foods were to be considered to be special foods within the definition of the Randolph and Cohn cases, petitioner's evidence of the outlay of all the foods consumed by the Ford family in 1975 is insufficient to establish that the respondent erred. For these reasons and on the entire record, we sustain the respondent's determination except to the extent set forth above. The only explanation for the late filing of petitioners' return given *428 is that petitioner-husband delayed in returning the prepared return with his signature at the time he was in North Carolina and Emilie was in New Jersey. Such an explanation cannot be considered "reasonable cause and not due to willful neglect" within the meaning of section 6651(a). Therefore, the delinquency penalty for late filing of the return was properly imposed by the respondent. In accordance with the foregoing, Decision will be entered under Rule 155.
Footnotes
1. Pursuant to General Order No. 6 dated March 8, 1978, the post-trial procedures set forth in Rule 182 of this Court's Rules of Practice and Procedure are not applicable to this case.↩
2. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise noted.↩
3. The weekly grocery list for vegetables consisted of 50 pounds of carrots; half a case of celery; 4-6 packages of spinach; a few cucumbers; a few beets; and, 6-10 bunches of parsley. Petitioners kept no records of their purchases. Emilie made estimates at various times ranging from $1,469.00 at the time the return was prepared to $1,892.00 about the time of trial. Nor did petitioners maintain records of non-special diet food which were purchased as normal diet foods. Petitioners' estimate in 1978 of the cost of normal diet food in 1975 was $900 - $1,000.↩