HOMER G. FLEMMING, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Flemming v. Commissioner
Docket No. 11388-78.
United States Tax Court
T.C. Memo 1980-583; 1980 Tax Ct. Memo LEXIS 12; 41 T.C.M. (CCH) 676; T.C.M. (RIA) 80583; December 30, 1980
Homer G. Flemming, pro se. Patrick E. McGinnis, for the respondent. GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: The Commissioner determined a deficiency of $ 4,092.70 in petitioner's Federal income tax for his taxable year 1976.The issue is whether petitioner may deduct the costs of vitamins, mineral supplements, health foods, yogurt, and bottled water which he purchased for his wife in 1976 as medical expenses under section 213 of the Internal Revenue Code *13 of 1954. [1]
FINDINGS OF FACT Petitioner timely filed his Federal income tax return for taxable year 1976 with the Internal Revenue Service Center at Austin, Texas. At the time he filed his petition herein, he resided in Tulsa, Oklahoma. During 1976, petitioner was married to Susan Flemming. In early March of 1973, he and Susan consulted a Dr. Anderson, who was a Doctor of Osteopathy in Jenks, Oklahoma, concerning Susan's medical condition. Dr. Anderson did not diagnose any ailment or prescribe any treatment, but referred Susan to Dr. William Kelly who at that time was praticing in Grapevine, Texas. Dr. Kelly was a Doctor of Dental Surgery and a Ph.D., not an M.D. Dr. Kelly examined Susan in late March of 1973. He informed Susan that she had "cancer." He did not prescribe any formal, orthodox treatment for this condition, but gave Susan a booklet containing diet suggestions. Susan never saw Dr. Kelly again. Based partially upon the booklet, petitioner purchased during 1976 for Susan's consumption health food products, B vitamins and mineral supplements, *14 yogurt, and bottled water. One of the health foods was a "digestive aid." Susan consumed another health food, containing vitamin C, to control an unspecified kidney disease, rather than cancer. Aside from the items described above, Susan during 1976 generally ate little or nothing. She would occasionally eat mangos, papayas, and raw vegetables. Thus, the health foods, vitamins, yogurt, and bottled water substituted for nutrients which she normally consumed. Petitioner deducted the cost of these items ($ 9,580) on his 1976 Federal income tax return as medical expenses under section 213. Respondent disallowed the deduction in full. OPINION Section 213 provides as follows: (a) ALLOWANCE OF DEDUCTION.--There shall be allowed as a deduction the following amounts * * * -- (1) the amount by which the amount of the expenses paid during the taxable year * * * for medical care of the taxpayer, his spouse, and dependents * * * exceeds 3 percent of the adjusted gross income * * *. (e) DEFINITIONS.--For purposes of this section-- (1) The term "medical care" means amounts paid-- (A) for the diagnosis, cure, mitigation, treatment, or prevention of disease, or for the purpose *15 of affecting any structure or function of the body * * *. The Income Tax Regulations provide as follows: SEC. 1.213-1. Medical, dental, etc., expenses. (e) Definitions-- (1) General.
(ii) Amounts paid for operations or treatments affecting any portion of the body * * * are deemed to be for the purpose of affecting any structure or function of the body * * *. Deductions for expenditures for medical care * * * will be confined strictly to expenses incurred primarily for the prevention or alleviation of a physical or mental defect or illness * * * [A]n expenditure which is merely beneficial to the general health of an individual * * * is not an expenditure for medical care. (2) Medicine and drugs. The term "medicine and drugs" shall include only items * * * which are generally accepted as falling within the category of medicine and drugs * * *. Such term shall not include toiletries * * * nor * * * cosmetics * * * or sundry items. Amounts expended for items which, under this subparagraph, are excluded from the term "medicine and drugs" shall not constitute amounts expended for "medical care." In Clark v. Commissioner,29 T.C. 196, 200 (1957), *16 this Court cited the following portion of respondent's Revenue Ruling 55-261, 1955-1 C.B. 307, 312, as being a correct interpretation of the predecessor of section 213(e): 15. Cost of special food and beverages prescribed for specific ailments.-- * * * Generally, the cost of special food or beverages does not qualify as a medical expense within the meaning of section 23(X) of the Code. However, in special cases, depending upon the particular facts presented, if the prescribed foof or beverage is taken solely for the alleviation or treatment of an illness, is in no way a part of the nutritional needs of the patient, and a statement as to the particular facts and to the food or beverage prescribed is submitted by a physician, the cost of such food or beverage may be deducted as a medical expense. Where the special food or beverage is taken as a substitute for food or beverage normally consumed by a person and satisfies his nutritional requirements, the expense incurred is a personal expense within the meaning of section 24(a)(1) of the Code; but where it is prescribed by a physician for medicinal purposes and is in addition to the normal diet of the patient, the *17 cost may qualify as a medicinal expense under section 23(X). In later cases, we have allowed taxpayers deductions for the excess of the cost of specially prepared foods designed to treat a medical condition over the cost of ordinary foods which would have been consumed but for the condition. Cohn v. Commissioner,38 T.C. 387, 391 (1962) (additional charge made by restaurants for preparing salt-free foods required on account of taxpayer's heart condition); Randolph v. Commissioner,67 T.C. 481 (1976) (excess costs of foods produced without herbicides and pesticides). Taxpayers generally, of course, have the burden in Tax Court proceedings of proving error in respondent's determination, Welch v. Helvering,290 U.S. 111 (1933), but it is "a burden which is not easy to meet in this type of case, where * * * petitioners may have merely satisfied personal, nonmedical needs." Randolph,supra at 489. We have stated that: In determining allowability, many factors must be considered. Consideration should be accorded the motive or purpose of the taxpayer, but such factor is not alone determinative. To accord it *18 conclusive weight would make nugatory the prohibition against allowing personal, living, or family expenses. Thus also it is important to inquire as to the origin of the expense. Was it incurred at the direction or suggestion of a physician; did the treatment bear directly on the physical condition in question; did the treatment bear such a direct or proximate therapeutic relation to the bodily condition as to justify a reasonable belief the same would be efficacious; was the treatment so proximate in time to the onset or recurrence of the disease or condition as to make one the true occasion of the other, thus eliminating expense incurred for general, as contrasted with some specific, physical improvement? [Havey v. Commissioner,12 T.C. 409, 412 (1949).] Petitioner's case suffers from two fatal defects. First, he seeks to deduct the full amount of the health foods and other substances rather than simply the excess costs of these items over more plain, everyday fare. Because these items provided for Susan's nutritional needs, only such excess costs would be deductible even if all other prerequisites to deductibility were present. Petitioner has presented *19 no evidence either of the existence or the amount of any additional cost. Second, and more importantly, there is barely a scintilla of evidence of Susan's medical condition or that the health foods were intended to alleviate it. There is absolutely no evidence as to the efficacy of such treatment. The record shows only that a Dr. Kelly, who was not even a medical doctor, told Susan she had "cancer" and some kind of kidney disease and gave her a booklet containing diet "suggestions," and that petitioner purchased vitamins, health foods, bottled water, and yogurt for her. Because the booklet was not in evidence, we are unable to determine whether the foods actually purchased were those recommended by the booklet as a cure for "cancer." And there was no showing at all that this somewhat unique procedure was in any way effective in curing cancer. The Cohn and Randolph cases stand in sharp contrast. In each, the Court was provided with detailed evidence as to the nature of the medical condition and the relation of the prescribed treatment to such condition. In Cohn, we found as a fact that the petitioner had recurrent heart failure and that his doctor prescribed a salt-free *20 diet for him, a routine measure in such cases. In Randolph, there was substantial expert testimony by eminently qualified physicians that the taxpayers were highly allergic to the herbicides and pesticides normally present in most retail food products and that they would reduce or eliminate their allergic reactions by restricting their diets to more expensive uncontaminated organic foods. In the instant case, petitioner admitted that one of the health foods was a "digestive aid." It seems to us that these items were purchased not to treat a specific condition (which may or may not have ever existed), but to maintain Susan's general health. In addition, in both Cohn and Randolph the petitioners provided us with some evidence as to the relative costs of the special and ordinary foods so that we were able to approximate the excess costs. We have no such evidence here, and even if we did the other flaws in petitioner's case would preclude him from meeting his burden of proof. We conclude that petitioner is not entitled to deduct any of the costs of the vitamins, health foods, yogurt, and bottled water which he purchased for Susan's consumption in 1976. To reflect the *21 foregoing, Decision will be entered for respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩