IRVING SETH LEVINE AND GRACE F. LEVINE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Levine v. Commissioner
Docket No. 9634-77.
United States Tax Court
T.C. Memo 1981-437; 1981 Tax Ct. Memo LEXIS 308; 42 T.C.M. (CCH) 763; T.C.M. (RIA) 81437; August 17, 1981. *308 On medical advice Ps moved their son from a mental hospital into a private apartment in the vicinity of the hospital. Held, amounts expended to maintain and insure their son's automobile are not deductible medical care expenses. Held further, amounts expended for their son's meals and lodging are not deductible medical care expenses. Held further, amounts expended for a surrogate parent/trustee/advisor for their son are not deductible medical care expenses. Grace F. Levine, pro se. Karen M. Martino, for the respondent. EKMAN
*309 MEMORANDUM FINDINGS OF FACT AND OPINION EKMAN, Judge: Respondent determined deficiencies in taxpayers' Federal income taxes in the amounts of $ 3,670 and $ 5,551 for the years 1974 and 1975 respectively. Due to concessions by the parties, the issues remaining for decision are (1) whether amounts expended by petitioners in maintaining and insuring their son's automobile are deductible as medical expenses, (2) whether amounts expended by petitioners for their son's meals and lodging while the son was an outpatient at a mental health clinic are deductible as medical expenses, and (3) whether fees paid by petitioners to a "surrogate parent/trustee/advisor" to assist their son in day-to-day activities are deductible as medical expenses. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Petitioners, Irving Seth Levine and Grace F. Levine, husband and wife, resided in New York, New York, at the time they filed their petition herein. They timely filed their joint Federal income tax returns for 1974 and 1975 with the Internal Revenue Service Center in Cincinnati, *310 Ohio. Petitioners' son, Guy, was born in 1955. Guy suffers from a mental condition in which he has problems maintaining adequate contact with reality. In March 1969, Guy was admitted to the Menninger Clinic (hereinafter Menninger) in Topeka, Kansas, as an inpatient. Guy remained an inpatient in the Children's Hospital at Menninger until February 1973, at which time other arrangements had to be made because Guy was approaching the maximum age level for inpatient status at the Children's Hospital. Guy was initially discharged from the Children's Hospital into a family care home which provided him with living arrangements, case work services, and public school enrollment. Guy also continued individual psychotherapy on an outpatient basis. The family care home arrangement lasted only about one month. The pressure of living outside the hospital and attending public school on a full-time basis proved too much for Guy, and he had to be temporarily rehospitalized. Other treatment alternatives were explored. The Children's Hospital program was no longer available to Guy, and Guy himself was adamant about wanting to get out of a mental institution. Menninger contacted several *311 other residential centers but these other centers were unwilling to accept Guy for further treatment, and Guy was unwilling to consider other institutions as a source of placement. In 1974 and 1975 there were no other places available to Menninger which would accept Guy as a patient and which Guy would accept as a treatment facility. In the opinion of Guy's psychotherapist, it was medically and psychiatrically essential that Guy remain in Topeka in the years at issue. The medical personnel at Menninger believed that Guy's relationship with his psychotherapist was not reproducible elsewhere. About the only other alternative available was to have Guy move into the community, share an apartment with another former hospital patient, [1] and sever further contact with Menninger's inpatient treatment program Guy would continue individual psychotherapy on an outpatient basis, and the hospital facilities of Menninger as a whole would continue to be available to him, but he would no longer be an inpatient in the hospital. *312 At the time Guy was discharged from the Children's Hospital at Menninger, the Children's Hospital had no apartment living plan. Guy would not have been accepted into the Adult Hospital's apartment living program because they program required a degree of self-sufficiency which Guy did not possess. In order for Guy to be treated, a unique situation was created with the assistance of petitioners and Arthur Glassman. The Menninger Social Work Department did not assist in creating this unique living environment for Guy because it did not have the time and in Guy's mind it was associated with the entire hospital treatment program which Guy very much wanted to leave. Petitioners rented a furnished efficiency-type apartment for Guy. [2] The apartment had a small kitchen, a living area, a bathroom, and a small bedroom. The apartment had no special medical furnishings of any type, but medical treatment was provided to Guy at his apartment on at least one occasion by his psychotherapist. Guy had difficulty maintaining personal hygiene and keeping his apartment clean. On at least two occasions Guy was threatened with eviction because his apartment was not kept properly cleaned. No *313 one connected with Menninger physically supervised Guy on a day-to-day basis at the apartment, nor did anyone else. Arthur Glassman (hereinafter Glassman) is a Topeka attorney who was approached by petitioners and retained by them to serve as a surrogate parent/ social service worker/ lawyer to help Guy manage his day-to-day affairs. Glassman worked through some problems with Guy's apartment manager, handled various matters pertaining to Guy's insurance, handled various problems Guy encountered with the telephone company, procured employment for Guy, assisted Guy in regulating the purchase of clothes, medical prescriptions, and auto repairs. Glassman also paid Guy's rent, telephone, and utility bills and paid for a cleaning woman out of funds sent by petitioners. During the years at issue Glassman would meet with Guy no less than once a week. Once Guy became an outpatient, hospital transportation was no longer available to him. He therefore required transportation in *314 and around Topeka, and a car was purchased for him to meet his transportation needs. Guy had been enrolled in a driver's education course at the request of Menninger as part of the plans to prepare him to move out of the hospital and into the community. According to his psychotherapist, Guy and a long-standing need for independence and the car was a symbol of independence. Guy used the car not only to transport himself to and from appointments at Menninger but also to perform tasks such as grocery shopping. OPINION Section 213(a), I.R.C. 1954, allows as a deduction expenses paid during the taxable year for the medical care of the taxpayer, his spouse, and dependents if such expenses exceed 3 percent of taxpayer's adjusted gross income and are not compensated for by insurance or otherwise. "Medical care" encompasses amounts paid for the diagnosis, cure, mitigation, treatment, or prevention of disease, or for the purpose of affecting any structure or function of the body; for transportation primarily for and essential to medical care; and for insurance covering *315 medical care. Section 213(e)(1). The first issue for our consideration is whether amounts expended for maintaining and insuring Guy's automobile are deductible medical expenses. This must be decided in favor of respondent. The burden of proof is upon petitioners. Rule 142, Tax Court Rules of Practice and Procedure. They have failed to show the automobile was used primarily for medical care. The facts that the Menninger staff initiated the driver's education course and that ownership of an automobile was an important independence symbol to Guy do not establish the automobile expense as a deductible medical care expense. A doctor's recommendation that an expense be incurred does not render that expense ipsofacto deductible. Volwiler v. Commissioner, 57 T.C. 367 (1971); Havey v. Commissioner, 12 T.C. 409 (1949). While owning an automobile may have been beneficial to Guy and may have enabled him to reach Menninger rapidly should an emergency arise, the *316 automobile was also used to transport Guy on his personal errands. Petitioners have not established the automobile was "primarily for and essential to" medical care, which is the touchstone for deductibility of transportation expenses under section 213. Whether amounts expended for Guy's meals and lodging are deductible as medical care expenses presents a much more difficult problem. Generally expenses for meals and lodging are non-deductible personal, living, or family expenses. Section 262. However, the cost of inpatient hospital care, including the cost of meals and lodging, is an expenditure for medical care. Section 1.213-1(e)(1)(v), Income Tax Regs.
Moreover, in certain instances expenses for care in an institution other than a hospital will qualify as expenses for care; the extent to which such expenses will qualify is primarily a question of fact which depends upon the condition of the individual and the nature of the services he receives (rather than the nature of the institution). Section 1.213-1(e)(1)(v) (a) and (b), Income Tax Regs. [3] *317 The basic controversy between petitioners and respondent involves whether Guy's apartment is an institution within the meaning of section 1.213-1(e)(1)(v), Income Tax Regs.
*318 Respondent urges that Guy's apartment was not specially equipped or furnished in any manner, no medical care or supervision was regularly provided to Guy at his apartment, and the availability of medical care was not a consideration in choosing Guy's apartment. Petitioners counter that Guy's relationship with his treating psychotherapist was not reproducible elsewhere; Guy's living arrangements became, in fact, part of the treatment plan; and, therefore, Guy's apartment was a therapetuic setting, a type of substitute hospital. While we can sympathize with petitioners' situation, the weight of authority supports respondent's position. The factual scenario here is quite similar to that in Volwiler v. Commissioner, supra. In Volwiler petitioners' daughter had been hospitalized two years for a mental disorder. Upon her release her psychiatrist wanted her to live in a "halfway house," but there were no such halfway houses available in the vicinity. Consequently, the psychiatrist, daughter, and parents set about "constructing" a halfway house. First a room in a boarding house and then an apartment were rented for the daughter, and the parents deducted the *319 amounts they contributed towards rent as a medical care deduction, claiming the boarding house and apartment were institutions in lieu of a halfway house. In denying the deduction we said: Whether the costs of remaining in an institution are deductible medical expenses depends upon the condition of the patient and the services furnished by the institution. The costs of lodging in such an institution are deductible only when the principal reason for the patient being at the institution is because of the medical care which it provides for him. Sec. 1.213-1(e)(1)(v), Income Tax Regs. The question, therefore, becomes whether the lodging provided at the boarding house and the apartment can qualify as a medical expense under such rules. We cannot distinguish Susan's living in either the boarding house or the apartment from her living in any other personal residence. The facilities were neither specially equipped nor specially furnished. There was no medical supervision provided to Susan and neither the boarding house nor the apartment engaged regularly in providing *320 medical care. Although living in the facilities might have been beneficial to Susan, such benefit is not sufficient to make the lodging part of institutional medical care. [Volwiler v. Commissioner, supra at 371.] The evidence presented establishes that Guy's apartment was not specially equipped or furnished; he received no regular therapy, medical care, or supervision of any type at the apartment. Guy's apartment was no different from any other personal residence. Petitioners place heavy reliance on Kelly v. Commissioner, 440 F.2d 307 (7th Cir. 1971), revg. a Memorandum Opinion of this Court, but such reliance is misplaced. In Kelly, taxpayer, away from home on a business trip, had emergency surgery and develped complications. Due to a shortage of hospital space, taxpayer was discharged from the hospital but advised not to return home. Taxpayer was allowed as a medical deduction expenses incurred for meals and hotel lodging during the period between his hospital release and the time he was allowed to return home. During the week taxpayer recuperated in the hotel, he only left the room to visit his surgeon; he was under the constant *321 supervision of his wife who changed his bandages, assisted him in walking and bathing, and administered his medication. While taxpayer's wife was not specially trained as a nurse, she did render nursing services to him. Taxpayer's only reason for remaining in the hotel was the shortage of hospital space in combination with his inability to travel. Petitioners' son, Guy, has received no comparable services at his apartment. He is free to come and go at will, and aside from a few hours each week when he is actually in therapy sessions, he is under no supervision whatever. Nor are medical services offered to Guy at his apartment. Section 1.213-1(e)(1)(ii), Income Tax Regs., requires that medical care expense deductions be confined strictly to expenses incurred primarily for the prevention or alleviation of a physical or mental defect or illness. The expenses incurred for meals and lodging in a private apartment simply do not meet this test. Guy would require shelter and food regardless of where he lived. In Jacobs v. Commissioner, 62 T.C. 813 (1974), *322 we were asked to determine whether the cost of procuring a divorce which action was "prescribed" by taxpayer's psychiatrist was a deductible medical care expenditure or a nondeductible personal expenditure. As we said in Jacobs v. Commissioner, supra at 819: One important condition, which petitioner must satisfy if his claim is to succeed, is whether the expenditure would have been made even if there had been no illness. This "but for" test requires petitioner to prove both that the expenditures were an essential element of the treatment and that they would not have otherwise been incurred for nonmedical reasons. Clearly Guy's meals and lodging expenses would have been incurred regardless of whether he was receiving psychotherapy treatment. Deductions are a matter of legislative grace. New Colonial Ice Co., Inc. v. Helvering, 292 U.S. 435 (1934). Petitioners have failed to bring themselves within section 1.213-1(e)(1)(v)(a), Income Tax Regs. The availability of medical care in Guy's apartment is not the principal reason for his presence *323 there. In enacting section 213, Congress authorized deductions for only certain medical care expenses, not all medical care expenses. While we realize petitioners, as concerned parents, are doing everything within their power to facilitate an eventual cure for their son, the expenses which they seek to deduct do not come within the scope of those authorized by Congress. The Volwiler decision has been of record for nearly 10 years now. If Congress wished to abrogate that decision, it certainly could have done so. We find Volwiler indistinguishable from the case at issue and, consequently, must find that expenses incurred for Guy's meals and lodging are not deductible. We might add that there is no evidence in the record to indicate the cost of Guy's meals and lodging was more expensive due to his medical condition than the cost of a healthy person's meals and lodging. A medical care expense which increases the cost of a personal expense may be deductible to the extent that the medical care expense exceeds the normal expense. [4] From the evidence presented here there *324 is no indication that any of Guy's expenses were greater or that they were other than personal living expenses. They are, accordingly, nondeductible. The final issue for our decision is whether fees paid by petitioner to Glassman for his assistance to their son in day-to-day activities are a deductible medical care expense. Legal expenses incident to medical care have been allowed as a medical deduction in the past where the legal expenses were "necessary to legitimate a method of medical treatment". Gerstacker v. Commissioner, 414 F.2d 448, 453 (6th Cir. 1969), revg. 49 T.C. 522 (1968). In Gerstacker taxpayer was allowed *325 to deduct as a medical care expense legal fees incurred in establishing guardianships which were required before taxpayer's wife could be involuntarily committed to a mental hospital. However, only fees necessary to the guardianship proceedings were deductible; no deduction was allowed for fees attributable to services rendered during the guardianship. Glassman was hired by petitioners to act as a surrogate parent, social service worker, lawyer. His role was to help Guy manage his day-to-day affairs. While Glassman's activities may have been invaluable to Guy, such activities were not "necessary to legitimate a method of medical treatment." Gerstacker's expenses were incurred because his wife could not be compulsorily confined to the mental hospital without the requisite guardianship proceedings. The fees paid to Glassman are not essentially bound up with Guy's medical care as were the guardianship fees. We cannot find that the fees paid to Glassman were incurred primarily for the prevention or alleviation of a physical or mental defect or illness as required by section 1.213-1(e)(1)(ii), Income Tax Regs.
In summary then, petitioners may not deduct *326 as medical care expenses amounts expended to maintain and insure their son's automobile, amounts expended for their son's meals and lodging, or amounts expended for a surrogate parent/trustee/advisor for their son. However, due to concessions made by the parties prior to trial, Decision will be entered under Rule 155. Footnotes
1. This apartment sharing lasted not more than one month. For the years with which we are concerned, Guy was generally living in an apartment by himself because he was unable to have little more than very superficial social contacts with other people.↩
2. Although the record is unclear as to when exactly the apartment was rented, Guy was living by himself in the apartment at some time in 1973 and during all of 1974 and 1975, the taxable years in issue.↩
3. Sec. 1.213-1(e)(1)(v), Income Tax Regs., provides the following rules for determining when expenses for care in an institution other than a hospital will constitute medical care: (a) Where an individual is in an institution because his condition is such that the availability of medical care (as defined in subdivisions (i) and (ii) of this subparagraph) in such institution is a principal reason for his presence there, and meals and lodging are furnished as a necessary incident to such care, the entire cost of medical care and meals and lodging at the institution, which are furnished while the individual requires continual medical care, shall constitute an expense for medical care. * * * (b↩) Where an individual is in an institution, and his condition is such that the availability of medical care in such institution is not a principal reason for his presence there, only that part of the cost of care in the institution as is attributable to medical care (as defined in subdivisions (i) and (ii) of this subparagraph) shall be considered as a cost of medical care; meals and lodging at the institution in such a case are not considered a cost of medical care for purposes of this section. * * *
4. E.g., Randolph v. Commissioner, 67 T.C. 481 (1976) (excess of cost of chemically uncontaminated food purchased in health food stores over cost of similar chemically treated food found in ordinary grocery stores deductible); Cohn v. Commissioner, 38 T.C. 387 (1962) (additional charge made by restaurants to prepare saltfree meals deductible); Rev. Rul. 75-318, 1975-2 C.B. 88↩ (excess of cost of braille books and magazines over cost of regular printed editions dedictible).