MYRON L. BLOOM AND ESTHER BLOOM, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Bloom v. Commissioner
Docket No. 5871-80.
United States Tax Court
T.C. Memo 1984-657; 1984 Tax Ct. Memo LEXIS 19; 49 T.C.M. (CCH) 340; T.C.M. (RIA) 84657; December 19, 1984. *19 Petitioner-wife suffered from various illnesses. Her physician recommended that she do various daily swimming exercises and that she spend the winter in a warm climate. She spent her winters at a hotel in Puerto Rico. The hotel had a heated pool in which she exercised. Petitioners deducted the lodging expenses while at the hotel as a medical expense. Held: The lodging expenses were not incurred as a necessary incident to the receipt of medical care. Consequently, the lodging expenses are not deductible as medical expenses under section 213, I.R.C. 1954. David R. Andelman and J. Thomas Price, for the petitioners. Charles W. Maurer, Jr., for the respondent. CHABOT MEMORANDUM FINDINGS OF FACT AND OPINION CHABOT, Judge: Respondent determined a deficiency in Federal individual income tax against petitioners for 1977 in the amount of $1,433. The issue for decision is whether petitioners are entitled to a medical expense deduction under section 213[1] for $3,369.45 paid by petitioners for lodging at a hotel in San Juan, Puerto Rico. [2] *20 FINDINGS OF FACT Some of the facts have been stipulated; the stipulation and the stipulated exhibits are incorporated herein by this reference. When the petition was filed in the instant case, petitioners Myron L. Bloom (hereinafter sometimes referred to as "Myron") and Esther Bloom (hereinafter sometimes referred to as "Esther"), husband and wife, resided in Gloucester, Massachusetts. Esther suffers from cervical spondylosis with spinal cord compression; she also has fibromyositis, a muscular and connective tissue inflamation and disorder related to the cervical spondylosis. Esther's condition is such that, from a medical viewpoint, it is most important that she spend her winters in a warm climate where she can use hydrotherapy. Petitioners have a heated pool at their home. Esther performs daily swimming exercises (hydrotherapy) in the pool. She performs these exercises by herself without assistance.When she cannot do her hydrotherapy, her condition *21 worsens. Petitioners do not have a nurse or housekeeper at their home. Esther generally manages the home with Myron's help. Esther was not confined to a bed during 1977. She does not use a wheelchair or cane. During 1969, Esther began to spend the winter months in Puerto Rico. Petitioners never visited Puerto Rico, except for a brief unexpected plane stopover, before 1969. Since about 1970, Esther has stayed at the Carib-Inn (at one time known as the Racquet Club) in San Juan during her trips to Puerto Rico. The Carib-Inn is a resort hotel, which advertises itself as "your tropical tennis resort". Its facilities include a pool, tennis courts, health club, casino, restaurants, coffee shop, bar, and night club (discotheque). The night club and casino were under construction during 1977. The pool is a warm swimming pool suitable for the hydrotherapy prescribed for Esther. There are no doctors or nurses on the staff of the Carib-Inn, and the Carib-Inn does not provide nursing services. While at the Carib-Inn, Esther followed a daily routine. After waking, she did some exercises in her room. She then had breakfast at a Carib-Inn restaurant. She went for a walk and then spent *22 the balance of the day at the pool. She performed her hydrotherapy in the pool by herself, without assistance.She also ate lunch in a restaurant that is adjacent to the pool. At 4:00 or 5:00 in the afternoon, she returned to her room where she spent the evening. Her room contained a refrigerator, and she generally prepared her own dinner and ate in her room. Esther did not use the tennis courts, casino, or night club at the Carib-Inn. Esther did not stay at a private apartment in Puerto Rico because of Myron's fear that she might fall and get hurt, with nobody there to discover her and help her. Esther did suffer falls twice while going for walks near the Carib-Inn. On each occasion people other than Carib-Inn personnel assisted her. Esther stayed at the Carib-Inn from January 1, 1977, through April 9, 1977.Esther incurred room charges for 98 days at $29.40 per day, for a total of $2,881.20. Esther returned to Boston, Massachusetts, on April 9, 1977, incurring transportation expenses of $204.20. On December 17, 1977, Esther returned to Puerto Rico, accompanied by Myron. The transportation expenses incurred were $221 for Esther and $441.20 for Myron. Esther and Myron stayed *23 at the Carib-Inn from December 17, 1977, through December 31, 1977. They incurred room charges for 15 days at $32.55 per day, for a total of $488.25. Thus, petitioners incurred transportation expenses of $866.40 [3] and lodging expenses of $3,369.45 during 1977 in connection with Esther's trips to the Carib-Inn. On their 1977 income tax return, petitioners claimed various medical expense deductions, including $3,281.25 for Esther's and Myron's lodging expenses at the Carib-Inn. In the notice of deficiency, respondent disallowed this amount in full. OPINION Petitioners contend that they are entitled to a medical expense deduction for Esther's lodging expenses [4] while at the Carib-Inn because Esther stayed at the Carib-Inn during the winter months solely for medical purposes, and the Carib-Inn is an "institution" within the meaning of section 1.213-1(e)(1)(v), Income Tax Regs. Respondent contends that the lodging expenses *24 are not deductible because they are personal or living expenses which were not incurred as a necessary incident to medical care, and that the Carib-Inn is not an "institution" within the meaning of the regulations. We agree with respondent's first contention. Section 213(a)[5] *25 allows a deduction, subject to certain limitations, for expenses paid for the medical care. Section 213(e)(1)[6] *26 provides that the term "medical care" includes amounts paid for the diagnosis, cure, mitigation, treatment, or prevention of disease, or for the purpose of affecting any structure or function of the body. Section 23(x) of the Internal Revenue Code of 1939, the predecessor of section 213, has been construed by this Court as allowing a deduction for both traveling expenses and amounts spent for food and lodging incidental to a trip necessary and prescribed for medical reasons.See Rose v. Commissioner,52 T.C. 521, 527 (1969), affd. per curiam 435 F.2d 149 (CA5 1970), and cases cited therein. But, in Commissioner v. Bilder,369 U.S. 499 (1962), revg. 289 F.2d 291 (CA3 1961) and 33 T.C. 155 (1959), the Supreme Court held that the Congress by the enactment of section 213 specifically excluded the deductibility of meals and lodging at the prescribed location as medical expenses unless incurred as part of a hospital bill. See Rose v. Commissioner,52 T.C. at 527. In Counts v. Commissioner, 42 T.C. 755, 763 (1964), this Court recognized that Bilder did not change the long-accepted rule that the costs of meals and lodging included as a part of inpatient care in a hospital or other institution are deductible as medical expenses. This rule is also embodied in section 1.213-1(e)(1)(v), Income Tax Regs.[7] *27 *28 Whether meals and lodging costs incurred at an institution, other than a hospital, are deductible as a medical expense is a factual question, the answer to which depends not on the nature of the institution but upon the condition of the person for whom the expenses were incurred and the care that the person received. Estate of Smith v. Commissioner,79 T.C. 313, 319 (1982); Robinson v. Commissioner,51 T.C. 520, 539-540 (1968), affd. 422 F.2d 873 (CA9 1970); Counts v. Commissioner,42 T.C. at 764. If a principal reason for the person's presence at an institution is the availability of medical care for that person, then the costs of meals and lodging, furnished as a necessary incident to such care, are deductible.[8]Estate of Smith v. Commissioner,79 T.C. at 319; Counts v. Commissioner,42 T.C. at 764. The record in the instant case establishes *29 that Esther was suffering from a "disease", within the meaning of section 213(e)(1)(A), during 1977. We are also convinced that her trips to the Carib-Inn were dictated primarily by considerations of her health and were in no sense pleasure trips or vacations; that is, that the trips were made for medical reasons and not for personal ones. These conclusions have, in effect, been conceded by respondent through his allowance of petitioners' transportation expenses for their trips to the Carib-Inn. [9] *30 Accord, Rose v. Commissioner,52 T.C. at 528; Cohn v. Commissioner,38 T.C. 387, 390-391 (1962). However, we cannot distinguish Esther's living at the Carib-Inn from her living in any other personal residence. Except for differences in climate, the record does not disclose that the hotel rooms in question were any more hospital-like than hotel rooms anywhere else. The rooms were neither specially equipped nor specially furnished. The pool appears to be no different than any *31 other hotel pool. The Carib-Inn provided no medical supervision to Esther, and the Carib-Inn did not engage regularly in providing medical care. In fact, as there were no doctors or nurses on the Carib-Inn staff, we cannot conclude that the Carib-Inn ever provided any medical care to anyone. Finally, we cannot conclude that the Carib-Inn provided any care or services to Esther that it did not provide to its other, healthier, guests. Although staying at the Carib-Inn may have been beneficial to Esther, such a benefit is not sufficient to make the lodging part of institutional medical care. Accord, Levine v. Commissioner,695 F.2d 57, 60-61 (CA2 1982), affg. a Memorandum Opinion of this Court; [10]Greer v. Commissioner,70 T.C. 294, 304-305 (1978), affd. on another issue 634 F.2d 1044 (CA6 1980); Volwiler v. Commissioner,57 T.C. 367, 371 (1971); Rose v. Commissioner,485 F.2d 581 (CA5 1973), affg. a Memorandum Opinion of this Court; [11]Rose v. Commissioner,52 T.C. at 530; Cohn v. Commissioner,38 T.C. at 391. Accordingly, we conclude that petitioners are not entitled to a medical expense deduction for their lodging expenses at the Carib-Inn. *32 Petitioners contend that they could have deducted the cost of placing Esther in a hospital as a medical expense. However, that possibility has no bearing on the deductibility of the particular expenses herein. Presumably, Esther would have been placed in a hospital in order to receive medical care, and she would have received such care in a hospital. Esther did not receive medical care in the Carib-Inn. Petitioners rely on Kelly v. Commissioner,440 F.2d 307 (CA7 1971), revg. a Memorandum Opinion of this Court. [12] In Kelly, the taxpayer, while on a business trip to New York City had an attack of appendicitis and underwent immediate surgery in a hospital. Seventeen days after surgery, the taxpayer was still too weak to return to Milwaukee, his wound was still draining, and the hospital was in need of his room. Kelly's doctor recommended that Kelly stay in a hotel room until he could safely return home. During the week he stayed in the hotel, Kelly left his room only for visits to his doctor. Kelly's wife changed his bandages, assisted him in walking and bathing, and provided him with the nursing services which he required. The Court of Appeals found that the hotel room was a *33 substitute for a hospital room. Kelly was, in essence, still a hospital patient when he was in the hotel. He had not recovered sufficiently from his operation to return home, but because the hospital was overcrowded, he temporarily continued his recovery in a substitute facility, where his wife could provide the nursing services which he required. As in the case of a hospital patient, his activity was quite limited; he left his room only when it was necessary to see his doctor. Kelly was receiving medical care in the hotel room. In the instant case, Esther did not require hospital care. The Carib-Inn did not serve as a substitute for a hospital. Esther was free to come and go at will, and was under no medical supervision whatever. Also, Esther did not receive the type of nursing services that Kelly had received in his hotel room. No medical services at all were provided to Esther at the Carib-Inn. See Greer v. Commissioner,70 T.C. at 305; Volwiler v. Commissioner,57 T.C. at 372. The facts in Kelly are distinguishable from those in the instant case. [13] *34 Finally, petitioners argue that the proper test to be applied is an "ordinary life test", that is, expenses incurred while occupying lodging away from home upon the advice of a doctor should not be deductible if a taxpayer merely continues his ordinary life while occupying those lodgings. However, even if we were to adopt this test, which we do not, the record does not reveal that Esther's life at the Carib-Inn was substantially different from her life at home in Massachusetts. The only clear difference revealed by the record is the location of Esther's activities. As discussed previously, this mere change in location is not sufficient to turn petitioners' nondeductible personal lodging expenses into deductible medical expenses. We hold for respondent. Decision will be entered for the respondent.
Footnotes
1. Unless indicated otherwise, all section references are to sections of the Internal Revenue Code of 1954 as in effect for the year in issue. ↩
2. As a result of the transportation expense adjustment (see n. 3, infra↩) and the fact that Esther's and Myron's actual lodging expenses exceeded the amount claimed by petitioners on their return, at trial petitioners claimed an overpayment in income tax.
3. On their return, petitioners claimed transportation expenses of $423.In the notice of deficiency, respondent allowed a deduction for transportation expenses of $866.40. Consequently, the deductibility of the transportation expenses is not in issue in the instant case.↩
4. Substantially all of the lodging expenses were for Esther, rather than Myron.↩
5. SEC. 213. MEDICAL, DENTAL, ETC., EXPENSES. (a) Allowance of Deduction.--There shall be allowed as a deduction the following amounts, not compensated for by insurance or otherwise-- (1) the amount by which the amount of the expenses paid during the taxable year (reduced by any amount deductible under paragraph (2)) for medical care of the taxpayer, his spouse, and dependents (as defined in section 152) exceeds 3 percent of the adjusted gross income, and (2) an amount (not in excess of $150) equal to one-half of the expenses paid during the taxable year for insurance which constitutes medical care for the taxpayer, his spouse, and dependents. [The subsequent amendment of this provision by section 202(a) of the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. 97-248, 96 Stat. 324, 421, does not affect the instant case.] ↩
6. SEC. 213. MEDICAL, DENTAL, ETC., EXPENSES. * * * (e) Definitions.--For purposes of this section-- (1) The term "medical care" means amounts paid-- (A) for the diagnosis, cure, mitigation, treatment, or prevention of disease, or for the purpose of affecting any structure or function of the body, (B) for transportation primarily for and essential to medical care referred to in subparagraph (A), or (C) for insurance (including amounts paid as premiums under part B of title XVIII of the Social Security Act, relating to supplementary medical insurance for the aged) covering medical care referred to in subparagraphs (A) and (B). [This section was redesignated section 213(d)(1) by section 202(b)(3)(B) of the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. 97-248, 96 Stat. 324, 421. New section 213(d)(2), which was added by section 482(a) of the Deficit Reduction Act of 1984, Pub. L. 98-369, 98 Stat 494, 847-848, does not apply to the year in issue.]
7. Section 1.213-1. Medical, dental, etc., expenses. * * * (e) Definitions--(1) General.
* * * (v) The cost of in-patient hospital care (including the cost of meals and lodging therein) is an expenditure for medical care. The extent to which expenses for care in an institution other than a hospital shall constitute medical care is primarily a question of fact which depends upon the condition of the individual and the nature of the services he receives (rather than the nature of the institution). A private establishment which is regularly engaged in providing the types of care or services outlined in this subdivision shall be considered an institution for purposes of the rules provided herein. In general, the following rules will be applied: (a) Where an individual is in an institution because his condition is such that the availability of medical care (as defined in subdivisions (i) and (ii) of this subparagraph) in such institution is a principal reason for his presence there, and meals and lodging are furnished as a necessary incident to such care, the entire cost of medical care and meals and lodging at the institution, which are furnished while the individual requires continual medical care, shall constitute an expense for medical care.* * *
8. In the instant case, petitioners are attempting to deduct only the lodging expenses while at the Carib-Inn. Petitioners did not deduct any meal expenses, nor have they claimed an overpayment as a result of such meal expenses. (See fn. 2, supra.↩) Consequently, we focus solely on the lodging expenses.
9. Respondent's allowance of the transportation expenses is not inconsistent with his disallowance of the lodging expenses. See section 1.213-1(e)(1)(iv), Income Tax Regs.The committee reports (H. Rept. 83-1337 (1954), p. A60; S. Rept. 83-1622 (1954), p. 219-20) which accompany H.R. 8300, the Internal Revenue Code of 1954, describe the situation as follows: The deduction permitted for "transportation primarily for and essential to medical care" clarifies existing law in that it specifically excludes deduction of any meals and lodging while away from home receiving medical treatment. For example, if a doctor prescribes that a patient must go to Florida in order to alleviate specific chronic ailments and to escape unfavorable climatic conditions which have proven injurious to the health of the taxpayer, and the travel is prescribed for reasons other than the general improvement of a patient's health, the cost of the patient's transportation to Florida would be deductible but not his living expenses while there.However, if a doctor prescribed an appendectomy and the taxpayer chose to go to Florida for the operation not even his transportation costs would be deductible. The subsection is not intended otherwise to change the existing definitions of medical care, to deny the cost of ordinary ambulance transportation nor to deny the cost of food or lodging provided as part of a hospital bill.
10. T.C. Memo. 1981-437↩. 11. T.C. Memo. 1973-1↩.
12. T.C. Memo. 1969-231↩.
13. Two Memorandum Opinions of this Court relied on by petitioners, Bye v. Commissioner,T.C. Memo. 1972-57and Ungar v. Commissioner,T.C. Memo. 1963-159↩, are similarly factually distinguishable.