**W. Lawrence OLIVER and Hazel P. Oliver, Petitioners,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

No. 18222.

United States Court of Appeals
Eighth Circuit.

Aug. 2, 1966.

W. Lawrence Oliver, Des Moines, Iowa, for petitioners, and filed brief.

Frederick B. Ugast, Atty., Dept. of Justice, Washington, D. C., for respondent. C. Moxley Featherston, Acting Asst. Atty. Gen., Lee A. Jackson, Robert N. Anderson and Herbert Grossman, Attys., Tax Division, Dept. of Justice, Washington, D. C., were on the brief.

Before VOGEL, Chief Judge, MATTHES and MEHAFFY, Circuit Judges.

VOGEL, Chief Judge.

W. Lawrence Oliver and Hazel P. Oliver, husband and wife, petitioners-taxpayers here involved, seek review of a determination by the Tax Court that there were deficiencies in income taxes paid by one or both of them for the taxable years 1959, 1960 and 1961. We affirm.

The tax return for 1959 was an individual return filed solely by Mr. Oliver. The returns filed for 1960 and 1961 were joint returns signed by both taxpayers. The Commissioner first determined the deficiencies for the years involved to be respectively $834.27, $1,691.17 and $2,831.42. After trial the Tax Court reduced these deficiencies to $219.04, $1,142.37 and $1,374.50 respectively, finding in favor of the taxpayers for the amounts in difference. There remain, however, certain items in dispute characterized as follows:

1. An additional amount of medical expenses claimed by the taxpayers as a deduction for the years involved;

2. Computation of depreciation on automobiles used by Mr. Oliver in his business and computation of depreciation on the taxpayers' home;

3. The characterization of certain proceeds from a lease transaction in 1960 as being either ordinary income or capital gains.

We will deal with each of these claims separately below.

### MEDICAL EXPENSES

Taxpayers reside in Des Moines, Iowa, where Mr. Oliver has practiced law for over thirty years. Since 1949 Mrs. Oliver has been under treatment for multi-

plesclerosis, a disease for which there is no known cure. The claimed medical expense deductions arose because of Mrs. Oliver's affliction.[1]

On different occasions Mrs. Oliver has been completely paralyzed. The most recent paralysis occurred in 1959, when she was taken by ambulance from Des Moines, Iowa to the Mayo Clinic at Rochester, Minnesota, being there confined for about seven weeks. Mr. Oliver visited his wife each week-end. The Tax Court allowed Mr. Oliver a deduction on his 1959 return for the expense of taking his wife to and keeping her at the Mayo Clinic in Rochester to the extent that such expenses could be documented. Certain other expenses, including the cost of his week-end trips to Rochester from Des Moines, were not identified as to items, payee or amount and were disallowed by the Tax Court.

We are concerned here with 26 U.S.C.A. § 213 of the Internal Revenue Code as to permissible deductions for medical care. Such section provides as follows:

"(1) The term 'medical care' means amounts paid—

"(A) for the diagnosis, cure, mitigation, treatment, or prevention of disease, or for the purpose of affecting any structure or function of the body (including amounts paid for accident or health insurance), or

"(B) for transportation primarily for and essential to medical care referred to in subparagraph (A)."

The taxpayer bears the burden of proving the facts necessary to establish his right to a deduction and the burden of proving the amount of the deduction. See, e. g., Interstate Transit Lines v. Commissioner of Internal Revenue, 1943, 319 U.S. 590, 593, 63 S.Ct. 1279, 87 L.Ed. 1607, rehearing denied, 320 U.S. 809, 64 S.Ct. 26, 88 L.Ed. 489; Burnet v. Houston, 1931, 283 U.S. 223, 227–229, 51 S.Ct. 413, 75 L.Ed. 991; Investors Diversified Services, Inc. v. Commissioner of Internal Revenue, 8 Cir., 1963, 325 F.2d 341, 353; Bennett v. Commissioner of Internal Revenue, 8 Cir., 1944, 139 F.2d 961, 963. See, also, § 1.213–1(h) of the Income Tax Regulations. Assuming, arguendo, that additional deductions, such as the costs of Mr. Oliver's week-end visits to his wife at the Mayo Clinic in Rochester, Minnesota, and the expense involved with his taking her for rides while there, could be included as medical expense, there has nevertheless been no substantiation of these claims by documentation of receipts and amounts. Accordingly, on this appeal the Commissioner's determination, supported by the findings of the Tax Court, must be held correct. Schroeder v. Commissioner of Internal Revenue, 8 Cir., 1961, 291 F.2d 649, 652; Bennett v. Commissioner of Internal Revenue, supra, at 139 F.2d 963.

In 1960 the taxpayers moved into a new home they built in Des Moines which contained many special features designed to make things easier for Mrs. Oliver and to aid in her care. Among other things, the house had wide doorways to accommodate a wheelchair, air conditioning, an intercommunication system and a built-in stereo system. A motor-driven hospital bed was purchased and installed at a cost of $600. At the trial Mr. Oliver, claiming to have had experience as a real estate appraiser, stated that the special ramps and doors cost $224.90 without adding any additional value to the house; that the air conditioning cost $1200 and added but $600 to the value of the house;

---

1. By stipulation the Commissioner conceded that the taxpayers paid the following amounts as medical expenses:

| "Year | Amount | Included Drugs and Medicines |
|-------|--------|------------------------------|
| 1959 | $3,896.07 | . . . . . . . . |
| 1960 | 1,295.13 | $390.00 |
| 1961 | 1,395.99 | 340.12" |

that the intercom system cost $800 and added $500 to the value of the house; and that the stereo system cost $5,000 and added $2,000 to the value of the house. He also asked that the entire $600 cost of the special bed be deducted. The Tax Court held $900 of the cost of the special features in the house and $500 of the cost of the bed were proper deductions but denied the remaining claimed balances.

■ Home improvements which aid in medical care as defined in § 213 of the Internal Revenue Code, supra, are proper medical deductions to the extent that they do not increase the value of property. Riach v. Frank, 9 Cir., 1962, 302 F.2d 374, 380. See, also, Gerard v. Commissioner, 1962, 37 T.C. 826, 829–830. In this regard the Tax Court said:

> " * * * The petitioner here, except for his testimony, has made no proof of the costs of the special features of the home built in 1960 nor of the extent to which any such costs did not increase the value of the home. While he said he had experience as an appraiser of real estate, there was no corroboration of that statement. * * *

> *      *      *      *      *      *

> " * * * we believe that some part of the costs of the special features of the home are allowable as medical expenses. Exercising our best judgment, we find that $900 of the cost of the special features of the home and $500 for the special bed are allowable as deductions for medical expenses in 1960."

■■ We are unable to find erroneous the Tax Court's refusal to credit Mr. Oliver's testimony given as a real estate appraiser on the implied grounds that his qualifications, and as a result, his testimony, were "improbable, unreasonable, or questionable". See Banks v. Commissioner of Internal Revenue, 8 Cir., 1963, 322 F.2d 530, 537, and cases cited therein. Mr. Oliver has a direct interest in the outcome of these proceedings. Because of his self-interest, the Tax Court, as the arbitrator of credibility, may disregard his testimony or, as here, reduce his valuations. Cullers v. Commissioner of Internal Revenue, 8 Cir., 1956, 237 F.2d 611, 615; Investors Diversified Services, Inc. v. Commissioner of Internal Revenue, supra, at 325 F.2d 351–352.

■ The Commissioner, himself, has not seen fit to challenge the Tax Court's findings although they increase the deductible amounts allowed to the taxpayers on the special features by the Commissioner in the first instance. They therefore carry a presumption of correctness and will be allowed to stand, there being no evidence to justify a conclusion of lesser deductions. See, Robert Louis Stevenson Apts., Inc. v. Commissioner of Internal Revenue, 8 Cir., 1964, 337 F.2d 681, 687–690, and cases cited therein; Schroeder v. Commissioner of Internal Revenue, supra.

■ In 1961 Mr. Oliver, on medical advice, took his wife to Arizona by airplane. Her attending physician testified before the Tax Court that a temperate climate, such as that in Arizona, would be of benefit to one suffering from multiplesclerosis. Mr. Oliver remained in Arizona for a week or ten days to help his wife get settled before returning to Des Moines. While in Arizona Mrs. Oliver stayed with relatives. Her husband furnished some funds for her expenses while she lived there. Pursuant to the stipulations entered into between the parties, the taxpayers were allowed to deduct their air fares to Arizona in 1961 but were not allowed to deduct the living expenses of Mrs. Oliver while in Arizona. We think the Tax Court was entirely correct in denying the deduction for the cost of Mrs. Oliver's maintenance while in Arizona. In doing so, the Tax Court followed the dictates of the Supreme Court in Commissioner of Internal Revenue v. Bilder, 1962, 369 U.S. 499, 82 S.Ct. 881, 8 L.Ed.2d 65, by permitting

the taxpayers to deduct the cost of travel to and from Arizona as a necessary part of Mrs. Oliver's medical treatment and by refusing to allow the cost of meals and lodging for the taxpayers while there. See, also, Cohn v. Commissioner of Internal Revenue, 1962, 38 T.C. 387. It therefore becomes unnecessary to deal with the Commissioner's alternative assertion that the taxpayers have failed to prove the amount of expenses incurred by Mrs. Oliver while in Arizona.

### DEPRECIATION

■ In taking depreciation deductions on three automobiles used by Mr. Oliver in the practice of his profession to the extent of 90%, taxpayers failed to assign any salvage value to the vehicles involved, as required under § 1.167(a)–1(c) of the Income Tax Regulations. The Commissioner computed the depreciation deductions on the basis of salvage values allotted to the 1956 Oldsmobile of $1,000, the 1960 Chevrolet of $800 and the 1961 Oldsmobile of $1,250. The taxpayers had assigned useful lives to these automobiles of only three years, five years and three years respectively. Thus, the taxpayers made computations on the basis that there was no salvage value in the automobiles after the assigned useful life periods. The Supreme Court, in Massey Motors v. United States, 1960, 364 U.S. 92, 107, 80 S.Ct. 1411, 4 L.Ed. 2d 1592, upholds the proposition that Congressional intent dictates a salvage value must be assigned to the property depreciated equal to its expected resale value at the end of its useful life. We find no persuasive evidence in the record showing that the Tax Court erred in upholding the valuations placed on the automobiles by the Commissioner. The Commissioner's finding of value carried the presumption of correctness and such findings, being upheld by the Tax Court, are not clearly erroneous and therefore may not be disturbed here on appeal. See, Oates v. Commissioner of Internal Revenue, 8 Cir., 1963, 316 F.2d 56, 58, and cases cited therein.

■ The taxpayers also seek additional depreciation deductions for a "proportionate share of depreciation and operating expenses" of their home, apparently on the theory that much of Mr. Oliver's business as an attorney was carried on in the home where he could be near his wife, who required nursing attention. The taxpayers, however, did not claim such depreciation when they initially filed their returns for the period from 1959 to 1961. Additionally, they have failed to carry the burden of proof that they were entitled to such a deduction and the specific amounts thereof.

### LEASE PROCEEDS

Taxpayers owned certain land which they leased to Charles and Ruth Barrett in 1959 for a term of 99 years. The Barretts, who were apparently in some financial difficulty, desired to sell a portion of the lease to a third party. This was done on September 23, 1960, with taxpayers' consent. The lease sale provided the Barretts with $15,000, half of which, or $7,500, went to the taxpayers. Such payment to the taxpayers released the Barretts from a part of their obligations under their lease. Rental from the third party was waived for a period of 20 years. In their 1960 return, the taxpayers treated the $7,500 Barrett payment as a long term capital gain. The Tax Court sustained the Commissioner's determination that such payment was ordinary income.

■ The payment received by the taxpayers of $7,500 for the modification of the lease can be fairly characterized as a substitute for some of the rental income that would have been paid to them in the future. Hort v. Commissioner of Internal Revenue, 1941, 313 U.S. 28, 61 S.Ct. 757, 85 L.Ed. 1168, holds that an amount received by a lessor in consideration of the cancellation of a lease of real estate is taxable to him as ordinary income, even though the amount so received is less than the difference between the present value of the unmatured rental

580

payments and the fair rental value of the property for the unexpired period of the lease. A modification of the lease, such as we have involved herein, is no different from a cancellation when the payment given is obviously received in place of future rentals. In effect, the taxpayers received the present value of future rental income which is taxable as ordinary income. Commissioner of Internal Revenue v. P. G. Lake, Inc., 1958, 356 U.S. 260, 78 S.Ct. 691, 2 L.Ed.2d 743; First Nat'l Bank of Kansas City v. Commissioner of Internal Revenue, 8 Cir., 1962, 309 F.2d 587. We find the Tax Court was correct in its ruling.

Lastly, the taxpayers claim that they sustained a loss in the sale of a portion of the lease from the Barretts to the third party in the sum of $5,234 for the year 1961. Apparently taxpayers are claiming a deduction to the extent of the amount of income they would have received for that year had they not waived the rental payments from the third party on the portion of the tract of land involved. In Hort v. Commissioner of Internal Revenue, supra, a similar deduction was claimed. The Supreme Court stated at pages 32–33 of 313 U.S., at p. 759 of 61 S.Ct.

" * * * [t]he cancellation of the lease involved nothing more than relinquishment of the right to future rental payments in return for a present substitute payment and possession of the leased premises. *Undoubtedly it diminished the amount of gross income petitioner expected to realize, but to that extent he was relieved of the duty to pay income tax. Nothing in § 23(e) indicates that Congress intended to allow petitioner to reduce ordinary income actually received and reported by the amount of income he failed to realize.*" (Emphasis supplied.)

The judgment of the Tax Court is in all things affirmed.