Frank M. Rabb and Betty L. Rabb v. Commissioner.
Rabb v. Commissioner
Docket No. 2573-70.
United States Tax Court
T.C. Memo 1972-119; 1972 Tax Ct. Memo LEXIS 143; 31 T.C.M. (CCH) 476; T.C.M. (RIA) 72119; May 22, 1972, Filed Stephen K. Miller, Lawrence W. Gaston, Jr., and Daniel P. Byron, 777 Chamber of Commerce Bldg., Indianapolis, Ind., for the petitioners. Robert G. Martinell, for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: Respondent has determined a deficiency in Federal income tax for the joint return of Frank M. Rabb, hereinafter petitioner, and Betty L. Rabb, hereinafter Betty, for the calendar year 1967 in the amount of $8,287.50. *144 The issue is the deductibility as medical expenses under section 213, [1] of certain expenditures allegedly incurred to provide "milieu therapy" in the treatment of a neurotic disorder. Findings of Fact Certain facts have been stipulated; the stipulation of facts and the exhibits attached thereto are incorporated herein by reference. Petitioner and Betty, husband and wife, were legal residents of Indianapolis, Indiana, at the time the petition was filed; a joint Federal income tax return and an amended joint Federal income tax return were filed on the cash basis for the calendar year 1967 with the district director of internal revenue, Indianapolis, Indiana. Betty was under psychiatric treatment from 1963 through 1967, the year at issue, and was still under the care of a psychiatrist at the time of the trial of this case in 1971. During 1967 Betty's condition was chronic anxiety neurosis with depressive and phobic symptoms, and at times a psychotic illness not unlike pseudoneurotic schizophrenia. Connected with the above there were frequent periods of hysterical complaints *145 or somatic conversion reactions, a form of loss of certain aspects of physical control due to emotional reasons. Subsequent to the year in question, the diagnosis of her condition by a different treating physician was essentially the same in nature, although the condition during the subsequent years became noticeably less severe. The phobias included that of being alone, of sudden death, of heights, of disease, and of autos. These fears were overdetermined, often interfering with Betty's ability to live. In addition to psychiatric consultation on an outpatient basis during 1967, there was in attendance on a 24-hour per day basis a registered nurse. The purpose of the nurse was to help allay Betty's chronic anxiety, fear of aloneness, protect her from the potential consequences of her depressive tendencies, and to facilitate the overall therapeutic program. The therapeutic program was termed "milieu therapy" by Betty's attending physicians. It was designed, through the use of increased socialization and participation in appropriate recreational, social, and other activities, to encourage and reinforce Betty's existing emotional resources, and to allow her to better cope with her *146 inner stresses. The program was established to provide a social environment without anxiety and an emotional atmosphere conducive to maintaining Betty's contact with reality in order that Betty's personality would slowly regenerate itself. In years prior and subsequent to the year here at issue, this form of treatment followed and was followed by, at various times, psychotherapy, the use of drugs, and institutionalization. In addition to substantial expenditures for nurses and doctors, which were not disallowed by respondent, petitioner incurred and claimed deduction for the following expenditures: Claimed on
Additional amounts
original
claimed on
return
amended return
Special tailored clothing
$ 2,625.00
Department store charge accounts
4,325.07
$1,424.00
Remodeling lake cottage
2,729.54
936.29
New furniture and appliances
6,364.08
Improvements to new apartment
3,243.32
Lake cottage mortgage payment
2,008.50
Travel
1,429.25
Moving expenses
499.77
Payments on boat
1,617.72
$19,287.01
$7,915.53
Less: Proceeds from sale of furniture 3,842.57
Net cost
$15,444.44
$7,915.53 478 Petitioner's 1967 income from *147 his practice as an opthalmologist was approximately $86,000. Petitioner's household consisted of himself, Betty, and two dependent children. Respondent's notice of deficiency disallowed the categories and amounts shown above as "claimed on original return" but made no mention of the additional amounts and categories shown as "additional amounts claimed on amended return." Opinion The first issue which must be dealt with is the status before this Court of the additional deduction claimed as medical expense deductions on the amended return. These items were not made a part of respondent's notice of deficiency and were not mentioned in the petition to this Court. The amounts were stipulated by both parties to have been expended during the year in question. Petitioner argues that by virtue of the statutory notice of deficiency and a timely filed petition, this Court has jurisdiction over 1967, and may therefore find an overpayment as provided for by section 6512 (b). Petitioner claims the petition to be broad enough since the petition requested that this Court give "such other and further relief as in the premises it may deem fit and proper." On brief, petitioner asserts that section *148 6512(b) is relevant since he argues that the amended return was filed as part of a claim for refund, that the claim predated the notice of deficiency, and that there is evidence of record to support a finding that the tax sought to be refunded had been paid. While section 6512(b) does give this Court the authority in certain circumstances to determine that there has been a tax overpayment, the scope of our opinion is nevertheless limited to the issues actually placed before us in the petition, in respondent's answer, and by amended pleadings. There is some evidence that the amended return was part of a claim for refund, and that the tax was actually paid, but it is not clear from the record when or to what extent the claim was denied by respondent. We decline to consider the items claimed by amended return to be issues before us. A claim for relief due to an overpayment must be explicitly set forth by petitioner in order to be considered by this Court. Rules 7(c) (4)(B) 4 and 63, Tax Court Rules of Practice. Petitioner's prayer that this Court give "whatever further relief is proper" is ineffective as a means of placing before us issues not otherwise specifically set forth. *149 The substantive issue of this case is the deductibility of certain expenditures claimed by petitioner to be medical expenses. are defined in section 213(e)(1) to include amounts paid: (A) for the diagnosis, cure, mitigation, treatment, or prevention of disease, or for the purpose of affecting any structure or function of the body, (B) for transportation primarily for and essential to medical care referred to in subparagraph (A) * * * Section 1.213-1(d)(1)(ii), Income Tax Regs,. states that medical deductions: will be confined strictly to expenses incurred primarily for the prevention or alleviation of a physical or mental defect or illness * * * [An] expenditure which is merely beneficial to the general health of an individual, such as an expenditure for a vacation, is not an expenditure for medical care. In this case there is no reasonable question that the amounts claimed were actually paid, nor that Betty was suffering from a specific illness. [2] The dispute centers primarily around the relationship between the illness and the expenditures. It is petitioner's view that a direct relationship exists notwithstanding the banal nature of the purchases, whereas respondent *150 claims the expenditures to be for ordinary living purposes and consequently not deductible by reason of section 262 which precludes deduction of personal, living, or family expenses unless their deduction is expressly provided for in other sections of the revenue code. To be deductible as medical expense, there must be a direct or proximate relation between the expense and the diagnosis, cure, mitigation, treatment, or prevention of disease. Edward A. Havey, 12 T.C. 409 (1949). It is clear that in determining whether such a relationship exists we do not merely view the labels of purchased goods or services or look for accepted medical titles and descriptions, but rather we must consider, no matter how mundane the service or product, its effect 479 on the specific illness or defect of the patient. C. Fink Fischer, 50 T.C. 164 (1968). With regard to both the special tailored clothing and the charge accounts, we are told by Dr. Brown, *151 the treating psychiatrist, that he "encouraged and recommended" among other things "shopping excursions." Brown's reason was to "enhance and strengthen Mrs. Rabb's tenuous hold on reality, promote healthier interpersonal relationships, encourage normal socialization and contacts with others, and circumvent regressive tendencies toward emotional withdrawal, sickness and psychosis." [3]
*152 Petitioner stated that he conferred and received advice from the psychiatrist regarding the expenditures, particularly in regard to the clothing and the move to the apartment, and that the expenditures would not have been incurred but for the belief that they "were necessary for the prevention of a more serious mental disorder." It is not enough to show that Betty was mentally ill, which indeed she was, nor is it enough in addition thereto to show that the expenses were incurred upon the recommendation of the psychiatrist. It is essential to show the proximate relationship of the expenses to the necessary treatment of the illness. Although Brown stated he "encouraged shopping excursions" there is no claim by him that these excursions were an essential element of the treatment, nor is there any evidence in the record of the degree to which such shopping excursions varied either in frequency or dollar amount from that which would have occurred without his specific "encouragement." We may take judicial notice of the generally therapeutic effect that shopping with unlimited charge accounts offers a housewife, even one in Betty's obviously ill state, but without a more explicit statement *153 of the medical purpose from the psychiatrist, and without additional proof from petitioner that of his $86,000 annual income, Betty would not have spent the $2,600 for clothing and $4,300 for other department store charge account items claimed herein, notwithstanding the absence of professional recommendation, we are unconvinced that the amounts claimed for clothing and charge accounts bore the requisite relationship to the treatment. It is notable that the testimony of the two psychiatrists seems to be in conflict. Brown stated he "encouraged" shopping. Small stated in effect that petitioner was forced into condoning the purchase of the special clothing for fear of Betty's violent anger. Even if we accept Small's reasoning for the purchase of the special clothing, petitioner has failed to show what portion of the total cost of the clothing was generated by the psychological need for special tailoring or alternatively that the clothing purchased was not needed by his wife and went unused. See J. Willard Harris, 46 T.C. 672 (1966). We are unable to speculate as to the answers to such questions. The testimony of petitioner (not himself an expert psychiatrist) that the *154 expenditures were necessary and that they were the result of psychiatric advice, barren of further detail or explanation is unconvincing. See Oliver v. Commissioner, 364 F. 2d 575, 578 (C.A. 8, 1966), affirming a Memorandum Opinion of this Court. We are not required to accept such general assertions from one so interested in the result herein at full face value simply because respondent did not cross-examine or place on the record other evidence to the contrary. Although the degree of Betty's illness by itself is circumstantial evidence that her husband would take unusual measures to cure or aid her, such illness is merely proof that some expenditures were in fact incurred, which is conceded by respondent; the degree of illness does not by itself shed light on the relationship between the specific deductions here at issue and the prescribed treatment. Petitioner's third category of expenditures is the remodeling of a lake cottage. We are faced with a record even more parsimonious with regard to the lake cottage than existed respecting the special clothing and charge accounts. Although 480 Brown stated that "frequent contact was maintained * * * [between him *155 and petitioner] with reference to current problems and decisions as well as future planning, examples of which include the decision to purchase a lake cottage," we are not told whether Brown recommended the lake cottage or simply discussed the idea with petitioner, who then purchased it on his own. (Petitioner's recitation of items about which he received advice from the psychiatrist makes no mention of the lake cottage.) Small testified that the cottage provided Betty with needed isolation from contact with fellow human beings which was useful in allaying her anxiety, but we are left to speculate as to what other forms of voluntary isolation might have been available, and whether or not petitioner and the two children also made use of the cottage. Even more fundamental is the missing fact of the value added to the cottage by the improvements. Even if we were convinced of a direct medical relationship (in fact we are unconvinced) to the extent the improvements added value to the cottage, there may be no medical deduction. Oliver v. Commissioner, supra. The fourth and largest of the expense categories claimed by petitioner is the purchase of new furniture and appliances. *156 There is no evidence of the necessity of the furniture and appliances, nor is there evidence of their usefulness for "medical" purposes or the residual value at the end of such time. See Wade Volwiler, 57 T.C. 367 (1971). Small's statement that each of the expense categories (including this one) "could be considered to have a direct relationship to the treatment and management of Mrs. Rabb" is at best speculative and not responsive to the tax issue at hand in light of his silence when asked on cross-examination whether he could identify any of the furniture or appliance items purchased. It seems doubtful that such a conclusive statement could be made with regard to the medical relationship, let alone the professed tax relationship, without at least some understanding of the items involved. Since petitioner has failed to establish either the necessity or the "direct relationship" to Betty's illness, we hold for respondent on the issue of the furniture and appliances. The final category of claimed deductions is that entitled "improvements to new apartment." The only specific mention of the apartment by Brown is that he was in "contact" with petitioner "with reference to *157 current problems and decisions as well as future planning, examples of which include * * * the decision to move from the family home to the less demanding environment of an apartment." In the opinion of Small, "had * * * [petitioner] not paid for the kind of things that relieved Mrs. Rabb's anxieties, it is most likely that her behavior would have become so terrible and dangerous that she would have been institutionalized." This assertion by petitioner begs the question here at issue. The question is not whether there were things which benefited Betty, but rather whether the items specifically claimed as deductions benefited her and were an integral part of the treatment. Although the creation of a "less demanding environment" was clearly the emphasis of Brown's "milieu therapy," Brown's testimony makes no mention of remodeling an apartment. It is not the apartment which is at issue but rather it is the improvements which must provide the requisite proximity to medical treatment. No such proximity is visible from the record before us. As to all issues herein, Decision will be entered for the respondent. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended, unless noted otherwise.↩
2. Respondent stipulated that the amounts claimed were paid as indicated in the categories shown; conclusions as to the nature of Betty's illness are set forth in our findings of fact and need not be repeated here.↩
3. Dr. Small, Betty's psychiatrist in year s subsequent to the year at issue, stated that Betty was a "compulsive phobic neurotic who is very much concerned with her appearance and about attire and dress. It was her feeling that she could not buy such items at ordinary places but must have them specially made to suit her purposes. Had she been thwarted and not allowed this particular type of security blanket, it is likely that she would have become angry and stayed angry over a long period of time. Mrs. Rabb, at least when I knew her, did not have anger in the ordinary sense, but had a strong, desperate, and deep felling of hostility which impelled her to acts of physical violence and death threats against herself, the children, and her husband. These horrible outbursts were usually precipitated by anything that increased her anxiety."↩