Irving Seth LEVINE and Grace F. Levine, Petitioner-Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.

No. 31, Docket 82–4035.

United States Court of Appeals, Second Circuit.

Argued Aug. 30, 1982.

Decided Dec. 6, 1982.

---

Grace Flax Levine, pro se.

Ann Durney, Tax Div., Dept. of Justice, Washington, D.C. (Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, Daniel F. Ross, Washington, D.C., of counsel), for respondents-appellees.

Before KEARSE, CARDAMONE and WINTER, Circuit Judges.

CARDAMONE, Circuit Judge:

Grace and Irving Levine are Connecticut residents who appeal from a decision of the United States Tax Court entered on October 21, 1981 by Judge Sheldon V. Ekman which denied them a medical expense deduction for costs associated with maintaining their mentally ill son in an outpatient psychotherapeutic arrangement in Topeka, Kansas. Since we believe that the Tax Court correctly ruled that the expenses in question are not deductible, we affirm. We are not unsympathetic to the argument presented by Mrs. Levine and to the efforts she and her husband are making to provide their son Guy with the best medical care available. However, a court's personal view of what is wise, enlightened or compassionate should not substitute for legislative judgment. We are constrained by the statutes and regulations as written, and by the expressed purposes of those who wrote them.

I

Appellants' son spent the years 1969 through 1973 as a patient at the Children's Hospital of the Menninger Clinic in Topeka, Kansas, suffering from mental illness. When he became too old to remain at the Children's Hospital, he refused to accept treatment at any other facility which would accept him and which was close enough for him to continue working with his Menninger Clinic therapist. At the same time, the Menninger staff found that Guy was not adequately self-sufficient to enter the hospital's adult apartment living program.

Guy's parents therefore established a unique outpatient arrangement. Guy used the Clinic facilities but lived in a rented furnished efficiency apartment elsewhere in Topeka. His parents bought him a car which he used to transport himself to and from the clinic and to attend to his personal business, such as grocery shopping. Arthur Glassman, Esq., a Topeka attorney, was retained by the Levines to help Guy manage his daily affairs. Glassman's duties included paying Guy's bills, hiring a housekeeper, handling household and insurance problems, procuring employment for Guy, and assisting in the purchase of clothes, prescriptions and auto repairs.

Appellants sought to deduct as medical expenses the costs of the car and car insurance, Glassman's services, and Guy's meals and lodging for the years 1974 and 1975. The Tax Court denied the deductions, ruling that these were nondeductible personal expenses.

II

Section 213(a) of the Internal Revenue Code of 1954 allows a deduction for expenses paid for the medical care of a taxpayer and his dependents. I.R.C. § 213(a) (1976). Section 213(e)(1) defines medical care expenses as amounts paid

(A) for the diagnosis, cure, mitigation, treatment, or prevention of disease, or for the purpose of affecting any structure or function of the body, [and]

(B) for transportation primarily for and essential to medical care referred to in subparagraph (A). . . .

I.R.C. § 213(e)(1) (1976).

■ Living expenses of one receiving outpatient medical care away from home are ordinarily not deductible medical expenses. *Commissioner v. Bilder,* 369 U.S. 499, 501–03, 82 S.Ct. 881, 882–83, 8 L.Ed.2d 65 (1962); *Montgomery v. Commissioner,* 428 F.2d 243, 244–45 (6th Cir.1970); *Oliver v. Commissioner,* 364 F.2d 575, 578–79 (8th Cir.1966); Treas.Reg. § 1.213–1(e)(1)(iv) (1982). However, if an individual is staying in a hospital principally to receive medical care, then board and lodging at the hospital are deductible medical expenses. *See Bilder,* 369 U.S. at 502–03 & n. 4, 82 S.Ct. at 883 & n. 4; Treas.Reg. § 1.213–1(e)(1)(v) (1982).

The extent to which costs for care in an institution other than a hospital constitute deductible medical expenses is a question of fact which depends on the *condition of the individual* and *the nature of the services* he receives, not on the nature of the institution. Thus, if an individual is in an institution primarily because his condition requires the particular type of medical services available there, the entire cost of such medical care, together with meals and lodging necessarily furnished while the individual requires continual care at the institution, are deductible medical expenses. For example, deductible medical expenses include the full cost of institutionalization for a mentally ill person who may not safely be left alone. On the other hand, if an individual is institutionalized in a setting in which he receives medical care, but the availability of such care is not the principal reason for his presence there, then only that part of the institutional cost attributable to medical care is deductible; meals and lodging at the institution are not. As an example, deductible medical expenses will not include the cost of room and board in a home for the aged if an individual is in such a home primarily for personal or family reasons, even though the cost of nursing and other medical services provided in the home are deductible. Treas.Reg. § 1.213–1(e)(1)(v) (1982).

A private establishment "regularly engaged" in providing medical services qualifies as an "institution." *Id.;* Rev.Rul. 69–499, 1969–2 C.B. 39. By "regularly engaged" it is understood that the persons who provide medical care at the establishment devote a substantial portion of their time to doing so in exchange for a consideration determined at arm's length. Rev.Rul. 69–499, 1969–2 C.B. 39. Thus, where a mentally retarded individual was placed in a private home near the hospital from which he had been released, and the couple in the home were paid a significant sum to care for and supervise the patient in accordance with his doctor's instructions so as to facilitate adjustment to community life, the foster home was considered an institution, and amounts paid to maintain the individual were deductible medical expenses. *Id.* at 39–40. The home served as a sort of substitute or nontraditional institution.

A significant case involving a nontraditional "institution" came before the Seventh Circuit which held that a taxpayer's hotel bill, for both food and lodging, constituted a deductible medical expense. *Kelly v. Commissioner,* 440 F.2d 307 (7th Cir. 1971). In *Kelly* a Milwaukee taxpayer while in New York City on business suffered an appendicitis attack, was hospitalized for surgery and developed minor complications. His wife travelled to New York to assist and supervise attendant nurses, and eventually learned to provide the required nursing services. Two and one-half weeks after the operation the surgeon discharged Kelly because the hospital was in need of his room. Nonetheless, the doctor advised the patient not to return to Milwaukee at that time because his wound was still draining and he was too weak to move about without assistance. Kelly left the hospital with the aid of his wife and a licensed practical nurse and spent the following week in a hotel room, leaving it only four times to visit his surgeon. His wife changed his bandages, assisted him in walking and bathing, administered medication, took his temperature, and otherwise provid-

ed necessary nursing care. On one occasion a hotel physician was called to the room to deal with the patient's rise in temperature.

Recognizing that the hotel is not "regularly engaged" in providing medical services, the court indicated that it may in any event serve as an "institution" within the meaning of regulation § 1.213–1(e)(1)(v). More importantly, it noted that the primary test of deductibility concerns the condition of the individual and the nature of the services received, rather than the nature of the institution. In *Kelly* the taxpayer's condition caused him to stay in the hotel where he could receive continuous daily care in close proximity to his physician after being discharged prematurely from the hospital. Under these circumstances, the court in *Kelly* held that the hotel bill was a deductible medical expense for care rendered in a substitute institution.[1] A dissenting judge concluded that the hotel was not an institution as defined in the regulation.

█ The Levines would have us follow the Seventh Circuit majority and recognize the deductibility of the cost of care in a substitute institution which does not fit within the Treasury Regulation's definition of institution. We note, however, that the facts in the substitute institution cases are distinguishable from those in the instant situation in one important detail. Except for a single occasion during the two-year period 1974–1975, Guy did not receive any medical care on the premises which plaintiff taxpayers would have us view as a substitute institution. The apartment had no special medical adaptations and no one physically supervised Guy on a day-to-day basis at the apartment. Hence, the Levines did not incur expenses for care *in* the apartment, whether or not we recognize substitute institutions and whether an apartment may qualify as such. We do not reach the legal issue decided by the Seventh Circuit; in this case the deducted costs were incurred incident to services rendered, but unlike in *Kelly*, the services were not rendered *in* the alleged substitute institution.

Concededly Guy's primary, if not sole, purpose for remaining in Topeka was to continue medically necessary treatment with his psychiatrist. But Congress amended the statutory definition of medical care in 1954 with the clearly enunciated purpose of cutting back on the deductibility of living expenses incurred while away from home for medical reasons.[2] The 1954 amendment was intended to curtail abuse in the area of medical expense deductions. In the process of remedying previous wrongs, Congress no doubt denied deductions to some deserving taxpayers as well. The legislative history reveals that even this result was foreseen and intended, for it indicates that, as an example, living expenses should not be deductible when one

---

1. Similarly, when a son rented his ill, dependent mother a small apartment in the building in which he lived, equipped it, and engaged full-time nursing aid to render care under a doctor's supervision, rent for the apartment was a deductible medical expense. This resulted because the rooms were retained for the purpose of providing better and less expensive medical care on the premises than could be had in a hospital setting, rather than merely for the convenience of the patient's family. *Ungar v. Commissioner,* 22 T.C.M. (CCH) 766, 768–69 (1963).

2. The deduction permitted for "transportation primarily for and essential to medical care" clarifies existing law in that it specifically excludes deduction of any meals and lodging while away from home receiving medical treatment. For example, if a doctor prescribes that a patient must go to Florida in order to alleviate specific chronic ailments and to escape unfavorable climatic conditions which have proven injurious to the health of the taxpayer, and the travel is prescribed for reasons other than the general improvement of a patient's health, the cost of the patient's transportation to Florida would be deductible but not his living expenses while there. However, if a doctor prescribed an appendectomy and the taxpayer chose to go to Florida for the operation not even his transportation costs would be deductible. The subsection is not intended otherwise to change the existing definitions of medical care, to deny the cost of ordinary ambulance transportation nor to deny the cost of food or lodging provided as part of a hospital bill. H.R.Rep. No. 1337, 83d Cong., 2d Sess. A60, *reprinted in* 1954 U.S.Code Cong. & Ad.News 4017, 4197; S.Rep. No. 1622, 83d Cong., 2d Sess. 219–20, *reprinted in* 1954 U.S.Code Cong. & Ad.News 4621, 4856.

with a chronic ailment is ordered by his physician to go to Florida in order to alleviate the injurious effect of an unfavorable climate. *See* note 2, *supra*. If a New Englander with a heart condition must spend two or three months in the South or West in order to survive the winter and Congress does not permit him to deduct his resultant living expenses, it is difficult to see why the Levines should be permitted to deduct Guy's room and board in Topeka. If we were to stretch the meaning of the term "institution" so far as to include Guy's living arrangement, it would be difficult to stem the ensuing tide of analogous situations demanding relief clearly not contemplated by Congress. In denying tax relief in the present situation while allowing a deduction for institutional care, we conclude that the fine line of deductibility should be drawn based upon the principle that only those medically necessary away-from-home living arrangements which involve continuous daily medical care on the premises may give rise to favorable tax treatment for the cost of meals and lodging. *See generally Volwiler v. Commissioner*, 57 T.C. 367, 371–72 (1971).[3]

### III

■ Costs incurred for purchasing and insuring a car for plaintiffs' son are also nondeductible. No evidence was introduced which demonstrated that the car provided "transportation primarily for and essential to medical care" as required by the statute, I.R.C. § 213(e), since Guy admittedly also used the car for ordinary personal business. The fact that his doctor recommended that the expenses be incurred in order to foster Guy's independence and thereby aid his recovery, does not render the costs *per se* deductible. *See Jacobs v. Commissioner*, 62 T.C. 813, 819 (1974); *Volwiler*, 57 T.C. at 370.

■ As for attorney Glassman's fees, legal expenses incident to medical care have been allowed as a deduction only when they are "necessary to legitimate a method of medical treatment." *Gerstacker v. Commissioner*, 414 F.2d 448, 453 (6th Cir.1969). In *Gerstacker* the court allowed a medical expense deduction for legal fees incurred to establish guardianships which were required before the taxpayer's wife could be involuntarily committed for treatment in a mental institution. However, the court would not allow a deduction for fees attributable to services rendered during the term of the guardianship. Glassman's day-to-day management of Guy's affairs was not necessary to legitimate Guy's treatment but, rather, to maintain him during treatment. In fact, plaintiffs themselves state that the attorney's charges were incurred for "supervisory guardianship cares [sic]" and for "non-legal duties." Glassman's fees, as those disallowed in *Gerstacker*, lack "the proximate relationship to the illness . . . required for deductibility," *id. See generally Gerstacker*, 414 F.2d at 450–53.

For the reasons stated the decision of the Tax Court is affirmed in all respects.

WINTER, Circuit Judge, concurring in the result:

I have no quarrel with the majority's analysis of the relevant statutory provisions and regulations. As the opinion recognizes, the result we reach is to a degree arbitrary since we deny deductibility to certain expenses which, on this record at least, are unquestionably for genuine medical purposes. Nevertheless, the statutory and regulatory scheme purposefully denies deductibility apparently because this and similar recurring situations raise factual issues in which the true need for medical care is

---

3. In a factual situation virtually identical to the one in this case, Judge Simpson noted that taxpayer's child left the psychiatric hospital not because of overcrowding, as in *Kelly*, or inadequacy, as in *Ungar*, but because she no longer needed hospital care. *Volwiler*, 57 T.C. at 372. Thus, the deductibility demarcation we discern above seems reasonable in that it distinguishes cases considered more severe, due to the need for daily hospital or hospital-like care, from those considered less severe, because continuous on-site medical supervision is not required. We are aware of the fact that in some instances an illness which does not call for continuous daily treatment may arouse more empathy than one which does, but it is apparent that Congress intended to use this general rule-of-thumb to accommodate the most often needy cases.

often difficult to determine. Because both Congress and the appropriate regulatory authorities have decided that the danger to the federal fisc of slippery slope analysis outweighs an ostensibly fairer and more searching approach, we must affirm the Tax Court.

My difference with the majority has to do with its view of the decision of the Seventh Circuit in *Kelly v. Commissioner,* 440 F.2d 307 (7th Cir.1971). Because I believe that the Levines' expenses for their son's food and lodging are *a fortiori* deductible under the theory of *Kelly,* I write separately. If, on the one hand, we are going to accept the harsh result dictated by the relevant statutory provisions and regulations, we should not create a substantial area of doubt, on the other, by attempting to reconcile our decision with the contrary and more lenient decisions of another circuit.

In *Kelly,* the taxpayer's presence in New York City was a medical necessity resulting from his operation. Because the hospital was overcrowded and Kelly was well enough to recuperate with the assistance of his wife, which amounted only to the care a spouse would administer at home, Kelly was moved to a hotel. The theory of the *Kelly* court was "that [the] taxpayer's condition, the nature of the services he required before he could travel home, and the hospital needs for his room, were the only reasons why he had to pay a hotel for food and lodging." *Id.* at 311.

I believe the Levines' case is stronger so far as the deductibility of expenses for their son's food and lodging is concerned. He faces a medical imperative of living in Topeka in order to obtain the only suitable treatment for his mental illness. In a perverse departure from the facts in *Kelly,* however, Guy Levine cannot take advantage of the Menninger Clinic's adult apartment living program, for which the expenses would be deductible, *see* IRS Letter Ruling 7714016, [1977] 9 Stand.Fed. Tax Rep. (CCH) ¶ 6950 (Jan. 10, 1977), not because he is too well, but because he is too ill. Thus, he has been forced to lease an apartment in Topeka, much as Kelly took a hotel room in New York, wholly for medical purposes. Indeed, resort to a non-institutional residence was more of a medical necessity in the case of Guy Levine than in the case of Mr. Kelly.

The majority agrees that Kelly's hotel lodging is analogous to Guy Levine's apartment but argues that Kelly's deduction of hotel costs were proper because his wife was present and rendered assistance. This distinction borders on the bizarre in my view. The services were merely spousal care which would have been available wherever Kelly was located and the cost of the hotel room was in no way related to obtaining such care. Moreover, if the assistance provided by Kelly's wife is significant, such a view might arguably render even the expenses of hiring Mr. Glassman deductible since his handling of Guy Levine's daily affairs is a medically necessary function in the case of a person with a partially incapacitating mental illness living in a non-institutional residence.

I would, therefore, reject *Kelly* explicitly. To do otherwise invites taxpayers with weaker cases than that presently before us to litigate the deductibility of similar expenses.