T.C. Memo. 1998-85


UNITED STATES TAX COURT


STEPHEN A. LENN AND KSENIA LENN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 3981-96.              Filed February 26, 1998.


    P has a son, S, who is disabled within the meaning
of the Individuals with Disabilities Education Act,
Pub. L. 91-230, sec. 601, 84 Stat. 175 (1970), as
amended, and is entitled to special educational
benefits from the public school system.  P
unsuccessfully sued the public school district to
obtain reimbursement for the tuition of a residential
private school for S.  S attended the private school,
and P has been allowed to deduct the tuition costs as
medical expenses under sec. 213, I.R.C.  P claimed a
deduction for the legal expenses incurred in the
lawsuit against the public school as medical expenses
under sec. 213, I.R.C.  R disallowed the deduction
because the lawsuit was not necessary for S to attend
the private school.  P contends that the reasoning of
<u>Gerstacker v. Commissioner</u>, 414 F.2d 448 (6th Cir.
1969), revg. and remanding 49 T.C. 522 (1968), which
permitted the taxpayer to deduct the legal expenses

incurred to involuntarily commit his wife in order to legitimate a method of medical treatment, should be extended to the facts of this case.

Held: The reasoning of Gerstacker v. Commissioner, supra, does not apply to the facts of this case, and P is not entitled to deduct the legal expenses under sec. 213, I.R.C.

James H. Rownd and Stephen L. Kadish, for petitioners.

Katherine Lee Wambsgans, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

GERBER, Judge:  Respondent determined a deficiency in petitioners Stephen A. and Ksenia Lenn's 1991 Federal income taxes of $4,464 and in petitioner Stephen A. Lenn's 1992 Federal income taxes of $8,788.  After concessions, the issue for our consideration is whether petitioners may deduct legal expenses that they incurred to obtain reimbursement for the costs of medical treatment as section 213[1] medical expenses.

FINDINGS OF FACT[2]

At the time the petition in this case was filed, petitioner Stephen A. Lenn resided in Bratenahl, Ohio, and petitioner Ksenia Lenn resided in Boca Raton, Florida.  In 1991, petitioners were

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2] The stipulation of facts and the attached exhibits are incorporated therein by this reference.

married and filed a joint Federal income tax return. In 1992, petitioners divorced, and Stephen A. Lenn (petitioner) filed a separate return and elected the "Head of household" filing status. Petitioner Ksenia Lenn is a party to this proceeding only for the 1991 tax year.

Petitioner has a son, Daniel Lenn, from a previous marriage. Before 1991, Daniel lived with his mother in Portland, Maine. In 1982, when Daniel was in the first grade, he was diagnosed with a learning disability. Daniel is disabled within the meaning of the Individuals with Disabilities Education Act (IDEA), Pub. L. 91-230, sec. 601, 84 Stat. 175 (1970), as amended. The IDEA requires that in order to receive Federal funding for education of handicapped children, a State must offer to a disabled child an individualized educational program (IEP) that addresses the child's individual needs in a way that is reasonably calculated to enable the child to receive educational benefits. 20 U.S.C. sec. 1400(c) (1970), as amended. Daniel attended public school through the eighth grade in the Portland School District under a series of IEP's, one for each school year, pursuant to the IDEA. Although Daniel was a special education student, he attended regular classes with nondisabled students for most of the school day. Because of his learning disability, Daniel had poor interpersonal skills and had difficulty interacting with his classmates, who frequently teased and ostracized him.

In 1991, Daniel was hospitalized for a 30-day period for depression and suicidal ideation. At that time, Daniel was diagnosed with significant cognitive deficits. A doctor treating Daniel during his hospitalization recommended that he enroll in a summer program at a school for children with learning disabilities. The summer program would be used to design an IEP that could be implemented by the Portland School District in the following school year. During the summer of 1991, Daniel enrolled in a summer program at Eagle Hill School in Hardwick, Massachusetts. Eagle Hill is a private school for learning disabled children who have emotional and educational problems related to their learning disabilities. Petitioner requested that the Portland School District pay for the summer program. The School District would pay for the summer program only if it was part of Daniel's IEP. During Daniel's hospitalization, doctors also recommended a neuropsychological evaluation, which was performed by Amy Weinstein, Ph.D., in May and June 1991 on the request of the Portland School District. Daniel was diagnosed with a severe nonverbal learning disability known as developmental dyslexia, a genetic disorder that impedes a child's normal development. This was the first time that the severity of Daniel's learning disability was identified. Weinstein's report also recommended additional testing.

In July 1991, Daniel underwent a series of educational, psychological, and neurological testing at the Cleveland Clinic Foundation. At petitioner's request, the Portland School District delayed preparing an IEP for Daniel's 1991-92 school year until it received the report from the Cleveland Clinic. Daniel was diagnosed as having pervasive developmental disorder, a form of autism, and attention deficit hyperactivity disorder. Professionals at the Cleveland Clinic, including Dr. Vanessa K. Jensen, Psy.D., a pediatric psychologist, recommended that Daniel be placed in a residential program.

After receiving the report from the Cleveland Clinic, the Portland School District prepared an IEP for the 1991-92 school year. The school district relied on the information that was provided from Daniel's extensive testing in preparing the IEP. Dr. Jensen reviewed Portland's proposed IEP. She was concerned with the large amount of time that Daniel would be in classes with nondisabled students under the Portland IEP and was worried that Daniel would suffer further teasing leading to further emotional problems. She also believed that Daniel needed individual attention that was not available in a normal academic environment. Dr. Jensen had recommended that Daniel be placed in a residential treatment program that could assist Daniel with basic personal care from the time he woke in the morning until he went to bed. Dr. Jensen reviewed Eagle Hill's curriculum and the

IEP that Eagle Hill prepared for Daniel for the 1991-92 school year and believed that Eagle Hill met Daniel's needs.

Daniel had made little progress academically during the 3 prior years in the Portland School District. Medical professionals had advised petitioner that there was a risk that Daniel's emotional condition could worsen and additional hospitalization would be necessary if he returned to public school. Based on the psychological evaluations and advice petitioner received, he was not satisfied with Portland's IEP and enrolled Daniel at Eagle Hill for the 1991-92 school year. The annual costs for Eagle Hill were about $40,000. Petitioner requested that the Portland School District pay all or part of Daniel's tuition. The school district refused to pay the tuition, and petitioner initiated an administrative due process hearing. The purpose of the hearing was to determine whether the IEP proposed by the Portland School District for the 1991-92 school year was adequate to meet Daniel's needs and whether residential placement was necessary. A special education due process hearing was held in October and November of 1991. In the administrative proceeding, petitioner maintained that a 24-hour residential program was necessary to treat Daniel's learning disability as well as to address his social and emotional needs.

On December 13, 1991, the hearing officer determined that Portland's IEP for Daniel for the 1990-91 school year, during

which Daniel was hospitalized, did not meet the legal standards set forth in the IDEA. However, the officer found that Portland's IEP for Daniel's 1991-92 school year represented a major change in educational services from the previous year's IEP. The officer determined that the proposed IEP was reasonably calculated to enable Daniel to receive educational benefits in an environment that was less restrictive than Eagle Hill and satisfied the legal standards of the IDEA. The hearing officer denied petitioner's request for reimbursement of Daniel's tuition at Eagle Hill. On January 10, 1992, petitioner initiated suit against the Portland School Committee and the State of Maine, Department of Education, in the U.S. District Court for the District of Maine to appeal the determination of the administrative due process hearing. On December 14, 1992, the District Court affirmed the decision of the administrative hearing officer. Petitioner appealed the District Court decision to the U.S. Court of Appeals for the First Circuit. On July 15, 1993, the U.S. Court of Appeals upheld the decision of the District Court denying petitioner reimbursement for the costs of Eagle Hill. Lenn v. Portland School Comm., 998 F.2d 1083 (1st Cir. 1993).

Daniel attended Eagle Hill for the majority of his high school education beginning in the summer of 1991 and graduating in 1995. Daniel did not attend Eagle Hill for a portion of the

1993-94 school year. Petitioner paid for Daniel's tuition by borrowing money from financial institutions, from friends, and against his retirement account. Daniel also received a partial scholarship from the school for the 1994-95 school year and a reduced tuition rate for the spring 1994 quarter. At the time he instituted the legal proceedings against the school district, petitioner believed that he would not be able to afford the costs of Daniel's tuition until his graduation because of his financial situation and obligations. Petitioner was concerned about his future income potential as a lawyer. In addition, petitioner's and Daniel's mother's health insurance coverage for Daniel was almost exhausted as a result of Daniel's psychological and psychiatric expenses.

During 1991 and 1992, petitioner paid legal fees in connection with the legal proceedings against the Portland School District in the amounts of $12,573 and $21,541, respectively. Petitioner deducted the legal fees as medical expenses under section 213. In the notice of deficiency, respondent determined that petitioner was not entitled to deduct the legal expenses under section 213. Respondent allowed petitioners to deduct the cost of the tuition at Eagle Hill as a section 213 medical expense.

## OPINION

Section 213 permits a deduction for expenses paid for medical care during the taxable year, not compensated for by insurance or otherwise. Sec. 213(a). Medical care is a personal

expense, and section 213 is an exception to the general rule of section 262 that personal, living, and family expenses are not deductible. Section 213(d)(1) defines medical care as amounts paid

> (A) for the diagnosis, cure, mitigation, treatment, or prevention of disease, or for the purpose of affecting any structure or function of the body,
>
> (B) for transportation primarily for and essential to medical care referred to in subparagraph (A), or
>
> (C) for insurance * * * covering medical care referred to in subparagraphs (A) and (B).

The regulations provide that medical expense deductions "will be confined strictly to expenses incurred primarily for the prevention or alleviation of a physical or mental defect or illness." Sec. 1.213-1(e)(1)(ii), Income Tax Regs.

To qualify as a medical expense deduction, the expense must be for services that are directly or proximately related to the diagnosis, cure, mitigation, treatment, or prevention of the disease or illness. Jacobs v. Commissioner, 62 T.C. 813, 818 (1974). An expense that provides an "incidental benefit", Havey v. Commissioner, 12 T.C. 409, 413 (1949), or that is merely in some way connected to medical care, Gerstacker v. Commissioner, 414 F.2d 448 (6th Cir. 1969), revg. and remanding 49 T.C. 522 (1968), is not deductible. Accordingly, petitioner would be entitled to deduct the legal expenses in issue under section 213 if there is a direct or proximate relationship between the legal fees and the treatment of a medical condition.

In considering the deductibility of expenses that are not purely medical in nature, we have turned to factors such as the taxpayer's purpose or motive in incurring the expense, the effect of the goods or services purchased on the medical condition, and the origin of the expense. Havey v. Commissioner, supra. In Jacobs v. Commissioner, supra, we applied a two-prong test to determine whether an expense is directly or proximately related to the treatment or prevention of a medical condition: A taxpayer must prove that the expenditure was an essential element of the treatment for a medical condition and would not have otherwise been incurred for nonmedical reasons.

Petitioner contends that the attorney's fees from the legal proceedings against the Portland School District were proximately related to the medical care that Daniel received at Eagle Hill. Petitioner contends that he reasonably believed that he would not be able to afford medical treatment for Daniel through his high school graduation unless the Portland School District paid for a portion of the costs. Accordingly, petitioner argues that the legal proceedings against the school district were essential in obtaining access to medical treatment for Daniel and were a necessary part of that treatment. Respondent contends that Daniel could have received medical treatment at Eagle Hill without petitioner's having to incur the legal expenses. Accordingly, respondent maintains that the legal expenses were not necessary to Daniel's medical care and are not deductible.

As part of his argument that the legal expenses were necessary to obtain medical care for Daniel, petitioner contends that it was medically necessary to place Daniel in a residential program to treat his physiological problems. Petitioner presented credible medical evidence of the severity of Daniel's developmental disorder and the need to place him in a residential facility. Conversely, respondent argues that the residential program was not necessary to treat Daniel's medical condition. Respondent maintains that the independent hearing officer found that residential care was not required for Daniel and that this decision was affirmed by the U.S. District Court and the U.S. Court of Appeals for the First Circuit.

The question of whether Daniel needed to be placed in a residential program was resolved in petitioner's earlier suits against the Portland School District, and it is not necessary for us to reconsider that issue here. Petitioner has been permitted to deduct the costs of the tuition at Eagle Hill as a section 213 medical expense. The issue in this case is not whether enrollment at Eagle Hill was necessary to alleviate Daniel's medical condition. Rather, we must determine whether the legal expenses were directly or proximately related to the medical care that Daniel received at Eagle Hill. This question can be answered without determining whether the residential care at Eagle Hill was necessary to treat Daniel's medical condition.[3]

---

[3] The cost of attending Eagle Hill School would also be deductible without a determination that Daniel's attendance at

(continued...)

Petitioner contends that the legal proceedings against the Portland School District were necessary to secure access to medical treatment for his son and that <u>Gerstacker v. Commissioner</u>, <u>supra</u>, is controlling. In <u>Gerstacker</u>, the U.S. Court of Appeals for the Sixth Circuit, to which this case is appealable, held that where involuntary commitment of a patient is necessary to render medical treatment, the legal expenses that are necessary for the commitment proceeding are deductible medical expenses. The taxpayer wife had a history of mental and emotional problems. On two prior occasions, the wife ran away from treatment facilities after being voluntarily hospitalized. Doctors advised the husband that his wife could not be successfully treated unless she was involuntarily confined and recommended that the taxpayer-husband institute guardianship proceedings over his wife, which led to her involuntary confinement and medical treatment for her mental and emotional condition. Both the husband and wife hired attorneys in the guardianship proceedings whose legal fees were deducted by the taxpayers as medical expenses.

---

[3](...continued)
the school was necessary to treat his medical condition. The costs of a special school for mentally or physically disabled persons is a deductible medical expense if the principal reason for attending the school is to alleviate the disability. <u>Fay v. Commissioner</u>, 76 T.C. 408 (1981); sec. 1.213-1(e)(1)(v)(<u>a</u>), Income Tax Regs. The deductible costs include meals, lodging, and education provided by the school that are incidental to the special services performed. <u>Fay v. Commissioner</u>, <u>supra</u>.

In Gerstacker v. Commissioner, supra, the Court of Appeals found that the commitment proceedings were essential to render medical treatment to the taxpayer wife. The court stated:

> It seems obvious to this Court that a commitment proceeding was necessary to render medical treatment in the present case where Mrs. Gerstacker would not stay in the hospital voluntarily. It also is obvious that commitment proceedings played a role in medical treatment, and that except for Mrs. Gerstacker's illness these legal expenses would not have been incurred. * * * [Id. at 450.]

The court held that where legal expenses are necessary to "legitimate a method of medical treatment", they are proximately related to the medical treatment and are deductible as medical care under section 213. Id. at 453. The court further held, however, that legal fees for the management of the guardianship estate and the conduct of the wife's affairs during the existence of the guardianship were not deductible as medical expenses because these services were not essential to legitimate medical treatment and therefore were not proximately related to the wife's medical condition.

Petitioner argues that at the time he incurred the legal expenses, he reasonably believed that he would not be able to afford long-term medical treatment for Daniel at Eagle Hill unless the Portland School District paid for at least a portion of the costs. Accordingly, petitioner argues that the legal proceedings against the school district were necessary to obtain medical care for his son. Under petitioner's theory, the fact that Daniel received the medical care despite the fact petitioner lost the lawsuit against the school district is not relevant.

Otherwise, according to petitioner, the deductibility of legal expenses under section 213 would incorrectly depend on the success of the litigation.  Petitioner has not satisfied the underlying requirement of a medical expense deduction as set forth in Gerstacker v. Commissioner, 414 F.2d 448 (6th Cir. 1969), that the expense be an essential part of medical treatment.  Accordingly, it is not necessary for us to determine whether, in the context of a medical expense deduction, the legal proceeding must be successful for the taxpayer to deduct the legal expenses.  Because Daniel attended Eagle Hill even though the school district did not contribute to the costs, it is far from clear that the legal expenses in this case were essential to obtain medical treatment.  Obviously, Daniel could have attended Eagle Hill without petitioner's instituting legal action against the school district.

This case is distinguishable from Gerstacker v. Commissioner, supra, because petitioner did not institute the legal action to legitimate or authorize medical treatment for his son.  The barrier to medical care in Gerstacker was legal in nature.  However, in this case, there was no legal impediment to Daniel's enrollment at Eagle Hill.  The barrier to, or burden on, the receipt of medical care was the financial cost of Daniel's treatment at Eagle Hill.  Petitioner argues that under the reasoning of Gerstacker v. Commissioner, supra, the standard for the deductibility of legal expenses should be whether a reasonable person in petitioner's financial situation would have

instituted legal action against the Portland School District for reimbursement of the tuition at Eagle Hill and thereby secure treatment for a child.

Petitioner's legal action against the Portland School District was not an essential or integral part of Daniel's medical treatment at Eagle Hill. Although residential care was recommended for Daniel by a mental health professional, the lawsuit was not commenced upon a doctor's recommendation as was the case with the involuntary confinement proceeding in Gerstacker v. Commissioner, supra. Respondent argues that petitioner was financially motivated to initiate the legal proceedings against the Portland School District and was not motivated by medical necessity. We agree. The legal fees in issue were incurred to obtain reimbursement for the costs of the medical care that Daniel received and not to obtain the medical care, as petitioner contends. This is so whether or not petitioner reasonably believed that he would not be able to pay for Daniel to attend Eagle Hill without contribution from the school district. Although section 213 does contain an income-based limitation on the deductibility of medical expenses, there is nothing in the legislative history that indicates Congress intended to base the deductibility of a particular type of expense on the taxpayer's financial status. Petitioner incurred the legal expenses to determine who would pay for his son's treatment at Eagle Hill. The expenses were not necessary for Daniel to attend Eagle Hill.

Legal expenses incident to medical care have been allowed as a medical expense deduction only when the legal expenses are "'necessary to legitimate a method of medical treatment'". Levine v. Commissioner, 695 F.2d 57, 61 (2d Cir. 1982), affg. T.C. Memo. 1981-437 (quoting Gerstacker v. Commissioner, supra at 453). Petitioner's action against the Portland School District was not to legitimate medical treatment. Rather, petitioner instituted the legal action to ensure that Daniel could receive medical treatment that was arguably necessary to treat his cognitive deficits without petitioner's having to bear the financial burden of that treatment. The legal action against the Portland School District, had petitioner been successful, would not have alleviated or treated Daniel's learning disabilities or psychological problems. It would have merely alleviated the financial burden often faced by families in providing medical care to their family members.

Petitioner asks us to expand the holding of Gerstacker v. Commissioner, supra, to the situation where a taxpayer institutes legal proceedings to seek payment for the costs of medical care that is otherwise obtainable and possibly already received. We find that there is not a proximate relationship between the legal expenses incurred to obtain reimbursement for medical care and the medical care received. Petitioner's legal expenses are not deductible medical expenses under section 213. While the legal expenses in issue may be connected to the son's treatment, they

lack the proximate relationship to the claimed illness to qualify as an expense for medical care.

Petitioners contend that the question of whether a direct or proximate relationship exists depends on the taxpayer's dominant motivation in incurring the expense. Petitioner relies on the standard of a proximate relationship used in the context of determining whether a bad debt is connected to a taxpayer's business, i.e., what the taxpayer's dominant motivation was in incurring the debt that resulted in the bad debt, citing United States v. Generes, 405 U.S. 93 (1972). Petitioner contends that his dominant motivation in initiating the legal proceedings against the Portland School District was to secure funding for Daniel's treatment at Eagle Hill. Accordingly, petitioner maintains that the legal expenses satisfy the dominant motivation test set forth in Generes and are therefore proximately related to Daniel's medical care. Petitioner also argues that the legal expenses are deductible as medical expenses under the origin of claim doctrine. Petitioner maintains that he commenced the legal action to obtain medical care for his son, and thus the origin of the legal expenses is the treatment of Daniel's disability. The dominant motivation test and the origin of claim doctrine cited by petitioner are in some respects similar to the second part of the Jacobs test, that the expenses would not have been incurred for nonmedical reasons.

In this case, petitioner might satisfy the second portion of the Jacobs test that he would not have incurred the legal

expenses for nonmedical reasons.  Petitioner was prompted to send Daniel to Eagle Hill in 1991 after his extensive hospitalization and after psychological examinations of Daniel had made petitioner aware, for the first time, of the severity of Daniel's mental condition.  It is clear that Daniel attended Eagle Hill because of his medical condition and that petitioner would not have instituted legal action against the Portland School District if Daniel did not have a severe learning disability.  However, even accepting petitioner's contention that the legal expenses would not have been incurred for nonmedical reasons, only legal expenses that are essential to the rendering of medical treatment at Eagle Hill are deductible.  Accordingly, petitioners are not entitled to deduct the legal expenses incurred in the legal proceedings against the school district under section 213.

To reflect the foregoing and concessions,

<u>Decision will be entered</u>

<u>under Rule 155.</u>